FIFTH DIVISION

MARCH 24, 2000

1-99-2577

SAXON MORTGAGE, INC., ) Appeal from the

) Circuit Court of 

Plaintiff-Appellant, ) Cook County. 

 ) 

v. )

)

UNITED FINANCIAL MORTGAGE )

CORPORATION, ) Honorable 

) Lee Preston, 

Defendant-Appellee. ) Judge Presiding. 

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiff Saxon Mortgage, Inc. (Saxon), appeals from the circuit court's order granting defendant United Financial Mortgage, Corporation's (UFM) motion to dismiss, under section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-

619 (West 1998)), and dismissing with prejudice Saxon's breach of contract complaint against UFM, based upon the doctrine of 
res
 
judicata
.  All questions on appeal emanate from the pleadings, motions and responses, and supporting materials.  

Saxon questions whether
 the circuit court erred in (1) dismissing Saxon's state court action based upon 
res
 
judicata
;
 (2) failing to recognize certain exceptions to 
res
 
judicata
 as applied to the present facts; 
and (3) failing to find disputed factual issues surrounding the application of 
res
 
judicata
, requiring denial of UFM's section 2-619 motion to dismiss.  

On December 14, 1998, Saxon filed a complaint for breach of contract against UFM in the circuit court of Cook County (state action), which is the subject of this appeal, from which the following facts are derived.

Saxon, a Virginia corporation, is engaged in the business of purchasing and securitizing
(footnote: 1) residential mortgage loans.  UFM, an Illinois corporation, is engaged in the business of originating, selling and servicing residential mortgage loans.

On February 28, 1994, UFM and Saxon's predecessor in interest, Saxon Mortgage Funding Corporation (collectively Saxon), entered into a sales and servicing agreement (Agreement), pursuant to which Saxon agreed to purchase mortgages from UFM on the terms and conditions set forth in the Agreement and in Saxon's Seller/Servicer Guide (Guide), which was specifically incorporated into the Agreement.     

Section 550 of the Guide provides that if a mortgage loan purchased by Saxon from UFM is prepaid in full within the first 180 days following the purchase, UFM must reimburse Saxon for the premium paid for that mortgage loan.

Between October 1996 and April 1998, eight of the mortgage loans purchased by Saxon from UFM were paid off within 180 days, allegedly entitling Saxon to a return of premiums in the amount of $70,455.77, pursuant to the Agreement and section 550 of the Guide.  Attached to Saxon's complaint are the Agreement, section 550 of the Guide, a schedule of the specific mortgage loans involved and sections 180 (representations and warranties) and 190 (indemnification) of the Guide.
(footnote: 2)
 
 
UFM is alleged by Saxon to have refused unreasonably and vexatiously to repay Saxon, despite Saxon's demands, and is in breach of the Agreement and Guide, entitling Saxon to prejudgment interest, attorney fees, and other costs, fees and expenses incurred.  

Saxon alleged further that on about May 1, 1997, it had filed suit against UFM in the United States District Court for the Northern District of Illinois, Case No. 97-CV-3257 (federal action).  The seven-count federal complaint, contained in the record on appeal in this case, involved a delinquent loan, identified as the "Stulka" loan.  Saxon there alleged breach of contract, breach of implied covenant of good faith and fair dealing, breach of express warranty, express indemnification, intentional misrepresentation, and negligent misrepresentation, and sought damages based on section 400 of the same contract involved in the state court action.  The federal action dealt with the investment quality of the loans sold by UFM to Saxon, rather than early mortgage redemption under section 550, the  subject matter of the state court action.  Attached to the federal complaint, also as exhibits, were the aforementioned Agreement and Guide.
(footnote: 3)
The federal complaint further alleged that prior to its filing of the federal court action, Saxon demanded that UFM repurchase the Stulka loan, which it had purchased from UFM on about March 28, 1995, under the terms and conditions set forth in the Agreement and Guide, or indemnify Saxon against its losses.  In addition to seeking damages in the amount of $118,196.27, which represented the losses claimed by Saxon as a result of UFM's breach of its obligations in connection with the Stulka loan and the resultant default on that loan, Saxon also prayed for prejudgment interest, attorney fees and costs.  

On about October 14, 1998, the district court entered summary judgment in favor of Saxon and against UFM in the amount of $122,858.70 in the federal action.  

In a letter from Saxon to UFM dated July 11, 1997, contained in the record on appeal, Saxon set forth the list of loans that were paid off early (footnote 2), and reasserted its demand for reimbursement under the Agreement and Guide, having a total due of $67,815.76.  Saxon requested payment by July 31, 1997.  The letter further indicated that although some discussions were held about the possibility of mitigating the amounts owed, no arrangement materialized.  Subsequent letters between the parties followed.  For example, in a letter from Saxon to UFM dated September 8, 1997, also contained in the record, Saxon outlines an agreement between the parties regarding the repayment of these sums in which UFM is alleged to have agreed to attempt to reduce its indebtedness to Saxon based on future loans sales between the parties.  UFM wrote Saxon on November 25, 1997, that, although it could not fulfill "perimeters [
sic
] they spoke about," Saxon was requested to call "so we can come up with a better solution."  Almost one year later, after a continuing series of letters, UFM wrote Saxon, on September 3, 1998, in part: "Please note that UFMC has every intention to consummate its obligation given it is provided with competitive lending practices.  Thus, please give us a call upon receipt of this letter so that we can implement any suggested resolution.  "Saxon's federal court motion for summary judgment in the factually divergent Stulka loan case by that time was awaiting decision, ultimately to be denied several weeks later.

 On February 19, 1999, UFM filed a section 2-619 motion to dismiss Saxon's state court action, based on the doctrine of 
res
 
judicata
 and the rule against claim splitting, with the federal court's order of summary judgment entered on October 14, 1998, cited as the basis for the motion.  

On June 23, 1999, following consideration of the parties' briefs, submission of evidence in connection with the motion, and oral argument, the circuit court granted UFM's section 2-619 motion and dismissed Saxon's state complaint, in its entirety, with prejudice, concluding that the underlying action was barred under the doctrine of 
res
 
judicata
.

I

Saxon first contends that the circuit court erred when it granted UFM's section 2-619 motion to dismiss, based on the doctrine of 
res
 
judicata
, because the requirements for application of the doctrine were not met.  Saxon argues that the claims at issue in this case and those at issue in the federal suit are not the same cause of action for 
res
 
judicata
 purposes, because they arose out of disparate cores of operative facts.  Rather, Saxon urges, comparison of the complaints reveals that there is almost no overlap with respect to the essential facts that give rise to its right to relief in the two cases.  

Under the "transactional analysis" adopted by our supreme court in 
River Park, Inc. v. City of Highland Park
, 184 Ill. 2d 290, 703 N.E.2d 883 (1998) (
River Park
), Saxon maintains, the federal and the state claims arise neither out of the same transaction for 
res
 
judicata
 purposes, nor out of a single group of operative facts.  Saxon argues the complaints reveal that the two actions involve completely different transactions.  The only matter at issue in the federal case was a dispute over the quality of the "Stulka" loan and UFM's breach of its obligations in connection with that transaction; at issue in the present case, however, are eight separate and distinct mortgage purchase transactions, with the factual allegations in the complaint pertaining only to early pay-offs in the respective transactions.
  UFM's position appears to be that since both claims originate from the Agreement, and the time periods of the two claims overlap, they are amenable to the doctrine of 
res
 
judicata
.  

A section 2-619 motion to dismiss is expected to identify defects or defenses that negate a cause of action or refute crucial conclusions of law or material fact that are unsupported by allegations of specific fact in the complaint.  
Peter J. Hartmann Co. v. Capital Bank and Trust Co.
, 296 Ill. App. 3d 593, 600, 694 N.E.2d 1108 (1998).  Among the matters that may be raised under section 2-619 is that "the cause of action is barred by a prior judgment."  735 ILCS 5/2-619(a)(4)(West 1998).  All well-pleaded facts in the complaint are admitted, together with all reasonable inferences gleaned from those facts, in the determination of whether significant facts are contained in the pleadings, which, if established, would entitle the complainant to relief; there will be no dismissal on the pleadings, unless it clearly appears no set of facts can be proved under the pleadings which will entitle the complainant to recover.  
Peter J. Hartmann Co.
, 296 Ill. App. 3d at 600.  Facts and evidence must be viewed in the light most favorable to the non-moving party.  
Williams v. Board of Education of the City of Chicago
, 222 Ill. App. 3d 559, 562, 584 N.E.2d 257 (1991).  If it cannot be determined with reasonable certainty that the alleged defense exists, the motion should not be granted.  
Consumer Electric Co. v. Cobelcomex, Inc.
, 149 Ill. App. 3d 699, 703, 501 N.E.2d 156 (1986).  A section 2-619 motion is subject to 
de
 
novo
 review.  
Peter J. Hartmann Co.
, 296 Ill. App. 3d at 600.  The question presented on appeal is "`whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.'"  
Zedella v. Gibson
, 165 Ill. 2d 181, 185-86, 650 N.E.2d 1000 (1995), quoting 
Kedzie & 103
rd
 Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 116, 619 N.E.2d 732 (1993).

The doctrine of 
res
 
judicata
 provides that a final judgment, rendered on the merits by a court of competent jurisdiction, is an absolute bar to a subsequent action involving the same claim, demand or cause of action between the parties.   
River Park
, 184 Ill. 2d at 302; 
Village of Maywood Board of Fire and Police Commissioners v. Department of Human Rights
, 296 Ill. App. 3d 570, 578, 695 N.E.2d 873 (1998) (
Maywood Board
); 
Airtite v. DPR Ltd. Partnership
, 265 Ill. App. 3d 214, 217, 638 N.E.2d 241 (1994) (
Airtite
).  The essential elements of 
res
 
judicata
 are: "(1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of cause of action; and (3) an identity of parties or their privies."  
People ex rel. Burris v. Progressive Land Developers, Inc.
, 151 Ill. 2d 285, 294, 602 N.E.2d 820 (1992) (
Progressive
).  The doctrine of 
res
 
judicata
 extends not only to those claims actually decided in the first action, but also to those issues that could have been decided in that suit.  
Progressive
, 151 Ill. 2d at 294; 
Maywood Board
, 296 Ill. App. 3d at 580.  The issue of whether a subsequent claim is barred by 
res
 
judicata
, an affirmative defense, is a question of law which this court reviews 
de
 
novo
.  See 735 ILCS 5/2-619(a)(4)(West 1998); 
American National Bank and Trust Co. of Chicago v. Village of Libertyville
, 269 Ill. App. 3d 400, 403, 645 N.E.2d 1013 (1995) (
American National Bank
).  

In 
River Park
, in determining whether claims are part of the same transaction for 
res
 
judicata
 purposes, our supreme court adopted the more liberal "transactional test" and rejected the "same evidence test," holding that the latter test is not determinative of identity of cause of action.  
River Park
, 184 Ill. 2d at 310-11.  Rather, the court held, under the transactional analysis, separate claims will be considered the same cause of action for 
res
 
judicata
 purposes if they arise from a single group of operative facts, regardless of whether different theories of relief are asserted.  
River Park
, 184 Ill. 2d at 311.  The transactional test allows claims to be considered part of the same

cause of action "even if there is not a substantial overlap of evidence, so long as they arise from the same transaction."  
River Park
, 184 Ill. 2d at 311.
(footnote: 4)
 Here, the claim at issue in the prior federal action was of an entirely different nature from the claims set forth in the present complaint, when the two complaints are compared.  The federal case was based on allegations that UFM breached its obligation to sell only "investment quality" loans in connection with the Stulka loan transaction; the present case involves claims for refunds of premiums paid for purchased loans that are due as a result of the early repayment of the loans in eight different transactions, as set forth in footnote 2. The factual matters at issue in the federal case concerned whether there were certain qualitative deficiencies in the Stulka loan, whether those deficiencies impinged upon that loan's investment quality, and whether Saxon  thereby was entitled to relief.  In contrast, the only facts at issue here are whether the separately identified loans were paid in full within 180 days after the loans were sold, thereby entitling Saxon to a refund of the premiums paid.

Not only were the transactions distinct, they took place during completely different time periods and could not have arisen out of the same factual matters.  The federal action involved the Stulka loan transaction which took place on March 25, 1995; the eight early repayment transactions at issue here individually took place during the time period from July 1996 through April 1998.  One of the claims at issue here did not even arise until after the federal suit was filed and several others arose only in the weeks and, in one case, the day before the federal filing.  Claims which did not exist at the time the dispute over the Stulka loan arose, and during the time period that case was proceeding to litigation in Federal court, cannot be said to have arisen out of the same facts that were at issue here.

Nor do the injuries suffered and the damages sought in the case 
sub
 
judice
 arise out of the same factual matters at issue in the federal case.  In the prior action, Saxon sought to recover the damages it suffered as a result of the Stulka loan default.  Recovery sought here is for completely different damages not based on default, but on UFM's contractual premium refund obligations.  

By its own terms, Saxon argues, the Agreement was designed to cover transactions that the parties would "from time to time" enter into and set forth the "terms and conditions of such purchase and sale arrangements."  Each of these individual transactions was independent from the others and gave rise to separate and independent rights and obligations, where each transaction involved its own offer of a loan for sale by UFM, acceptance of that offer by Saxon and separate consideration in the form of the premium payment.  Although the master Agreement set forth the terms and conditions that would apply to each of these individual transactions, this fact clearly does not support the conclusion that this case involved a single transaction or a single core of operative facts for 
res
 
judicata
 purposes.  

Further, based on the evidentiary material before the circuit court at the time the federal case was pending, it is evident that the parties themselves did not regard the dispute over the Stulka loan and the premium refund obligations as related claims, since they still were negotiating separately over the premium refund obligations during that period.  There is no evidence that at any time either party considered those claims related to or part of the pending federal suit; both parties treated these matters as distinct.  It is consistent with the parties' own expectations that the matters be treated as separate transactions for 
res
 
judicata
 purposes. 

The fact that the same underlying master Agreement was involved in both cases does not establish that they are the same cause of action; they involve separate transactions, factual situations, time periods, obligations, issues, damages and claims for relief and invoke different provisions of the underlying master Agreement in order to meet the nature and character of each distinctive grievance.

In 
Rodgers v. St. Mary's Hospital of Decatur
, 149 Ill. 2d 302, 597 N.E.2d 616 (1992), repeatedly cited with approval by the court in 
River Park
, the supreme court refused to apply 
res
 
judicata
 although there clearly was a relationship between the claims at issue in the two cases.  
Rodgers
 involved an action against a hospital under the X-Ray Retention Act arising out of its alleged failure to keep an X-ray.  Plaintiff there claimed that he had been damaged by his wife's wrongful death as a result of the hospital's breach of its obligation.  The hospital argued that this second action was barred by the final judgment in a prior medical malpractice action by the plaintiff against the hospital arising out of his wife's treatment.  Notwithstanding the fact that there was an obvious connection between the two cases, having 
both related to the wife's treatment at the defendant  hospital, the court held that even under the transactional analysis, they were not the same causes of action for 
res
 
judicata
  purposes because the "facts essential to each suit did not arise from the same transactions or incidents."  
Rodgers
, 149 Ill. 2d at 312.  The court further explained that the duty to preserve the X-ray, the incidents causing the X-ray to be missing, and the potential evidentiary value of the missing X-ray all were issues unrelated to determining medical malpractice liability in the first cause of action.  
Rodgers
, 149 Ill. 2d at 313.  To the same effect are 
American National Bank
, 269 Ill. App. 3d at 406-07; 
Regan v. Ivanelli
, 246 Ill. App. 3d 798, 807-08, 617 N.E.2d 808 (1993); 
Stathis v. First Arlington National Bank
, 226 Ill. App. 3d 47, 53, 589 N.E.2d 625 (
1992); 
Benton v. Smith
, 157 Ill. App. 3d 847, 854-55, 510 N.E.2d 952 (
1987); 
Pfeiffer v. William Wrigley Jr. Co.
, 139 Ill. App. 3d 320, 324, 484 N.E.2d 1187 (
1985). 

Another supreme court decision, 
Torcasso v. Standard Outdoor Sales, Inc.
, 157 Ill. 2d 484, 626 N.E.2d 225 (1993), further supports the position that two claims are not the same cause of action simply because they involve the same contract or contractual relationship.  There, a claim was based upon an alleged breach of a brokerage agreement arising out of the failure to procure a lessee for certain property.  A prior suit between the parties had involved a claim for recovery of a commission due under the terms of the same brokerage contract.  Notwithstanding the fact that the two actions involved the same contract, as in the case before us, the supreme court held that they were not the same causes of action for 
res
 
judicata
 purposes, noting that the transactions and time periods were different and facts required to prove the first cause of action were not similar circumstances applicable to the proofs necessary for the second cause of action.  The same patterns existed in 
Baird & Warner, Inc. v. Addison Industrial Park, Inc.
, 70 Ill. App. 3d 59, 387 N.E.2d 831 (1979) (claims which arose out of the same contract, but involved separate transactions); and 
Stratemeyer v. West
, 136 Ill. App. 3d 1095, 484 N.E.2d 399 (
1985) (individual transactions were identifiable in the master agreement between the parties, but were separate and distinct, precluding application of 
res
 
judicata
).

In the present case, although the master underlying Agreement generally sets forth the terms and conditions that will govern the various types of transactions entered into by the parties, each individual transaction was clearly a separate and independent obligation.  Each clearly involved a separate offer of sale by UFM, acceptance of that offer by Saxon, and consideration in the form of the premium paid.  The principle of 
res
 
judicata
 simply does not apply.

II 

As previously stated, 
res
 
judicata
 applies not only to questions which actually were litigated in the earlier proceeding, but also extends to those questions which could have been raised or determined.  
Builders Plumbing Supply Co. v. Zambetta
, 143 Ill. App. 3d 188, 191-92, 492 N.E.2d 977 (1986) (
Builders Plumbing
).  Both actions in the instant case emanate from the same contract, the underlying Agreement, which is the foundation of each suit.  In the federal suit, Saxon sought $118,196.27, plus interest, fees and costs, pertaining to the Stulka loan, on the basis that the loan was of poor investment quality, contrary to the Agreement; in the present case, Saxon seeks $70,455.77, plus interest, fees, costs and expenses in connection with eight loans which were paid off early, thereby contractually entitling Saxon to premium refunds.  The evidence necessary to prove Saxon's case in the federal action ineluctably was different from that necessary to prove its case here. 

I
n 
River Park
, plaintiffs were seeking to recover in a second state court action based upon exactly the same facts that had been at issue in the prior federal court action, merely by asserting different theories of recovery in the second suit.  In contrast, Saxon is not seeking to recover based upon the facts or circumstances of the Stulka loan, nor is it merely asserting new or different legal theories in an effort to recover based upon any of the same matters that were at issue in the prior proceeding.  Rather, Saxon is seeking to recover for entirely separate injuries arising out of separate transactions that took place at separate times based upon distinct factual matters.  Unlike 
River Park
, the factual allegations in these two cases concerning these separate transactions are completely different.  The circuit court misapplied the supreme court's holding in 
River Park
 to the facts here. 

The doctrine of 
res
 
judicata
 also prohibits a party from subsequently seeking relief by splitting a single cause of action into more than one proceeding.  
Rein v. David A. Noyes & Co.
, 172 Ill. 2d 325, 339, 665 N.E.2d 1199 (1996) (
Rein
).  The rule against claim splitting precludes a plaintiff from suing for part of a claim in one action and then suing for the remainder in another.  
Rein
, 172 Ill. 2d at 340.  This rule is based upon the premise that litigation must end and that no person should be harassed unnecessarily with multiple lawsuits.  
Rein
, 172 Ill. 2d at 340.  The rule has been relaxed where there has been an omission due to ignorance, mistake or fraud, or where it would be inequitable to apply the rule against claim-splitting.  
Rein
, 172 Ill. 2d at 341.   Section 26(1) of the Restatement (Second) of Judgments (Restatement (Second) of Judgments §26(1) (1980)) sets forth situations in which it would be inequitable to apply the claim-splitting rule:  (1) 
the parties have agreed in terms or in effect that plaintiff may split his claim or defendant has acquiesced therein
; (2) the court in the first action expressly reserved plaintiff's right to maintain the second action; (3) plaintiff was unable to obtain relief on the claim because of a restriction on the subject-matter jurisdiction of the court in the first action; (4) the judgment in the first action was plainly inconsistent with the equitable implementation of a statutory scheme; (5) the case involves a continuing or recurrent wrong; or (6) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason.  (Emphasis added.)  Restatement (Second) of Judgments §26(1) (1980); 
Rein
, 172 Ill. 2d at 341; 
Airtite
, 265 Ill. App. 3d at 219
; see 
Thorleif Larsen and Son, Inc. v. PPG Industries, Inc.
, 177 Ill. App. 3d 656, 661-62, 532 N.E.2d 
423 (1988) (
Thorleif Larsen
).

In this regard, the facts before the circuit court demonstrated that UFM agreed to the resolution of the premium refund obligations separately from the dispute at issue in the federal action over the Stulka loan, as evidenced from UFM's own statements, as well as its actions concerning the resolution of these claims.  A series of letters reflect that these efforts toward accommodation continued throughout the time the federal court action was pending and at least up until September 3, 1998, shortly before the entry of summary judgment in that case.  UFM's attempts to resolve these matters through future transactions, without objection at any time during pendency of the federal suit, constitutes an agreement to the splitting of these claims, if such  there was, or, at the very least, demonstrates that it acquiesced in the splitting of these claims by Saxon, if indeed the claims can be said to have been split.

Illinois courts have applied this exception to preclude a defendant from invoking 
res
 
judicata
 as a bar to a subsequent suit.  For example, in 
Thorleif Larsen
, the court applied this exception in rejecting 
res
 
judicata
 where plaintiff had simultaneously brought two actions against defendant, one in Cook County to foreclose a mechanics lien and one in DuPage County seeking damages under the construction contract.  After defendant successfully moved to dismiss the Cook County action, it sought summary judgment in the DuPage County suit on the basis that it was barred by 
res
 
judicata
 as a result of the judgment in the Cook County case.  The lower court's grant of the motion based on 
res
 
judicata
 was reversed, based on the fact that defendant had in effect agreed to or  acquiesced in the splitting of the claim by its failure to object to the maintenance of separate suits.  The appellate court, citing language from the Restatement of Judgments (Second), explained:

"Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does  the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action.  The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim."  
Thorlief Larsen
, 177 Ill. App. 3d at 662, quoting Restatement (Second) of Judgments §26, comment a, at 235 (1982).

Under such circumstances, the court held that a defendant should not be allowed to invoke the doctrine of 
res
 
judicata
 as a bar to a plaintiff's action in view of the manifestly unjust result that plaintiff would be denied any remedy whatsoever on the separate claim.  
Thorlief Larsen
, 177 Ill. App. 3d at 662-63.

Similarly, in 
Airtite
, the court also found that defendant was precluded by its own actions from relying on 
res
 
judicata
 based upon this exception.  
Airtite
 sought to foreclose a mechanics lien.  Defendant there argued that the case was barred by 
res
 
judicata
 based on a prior federal court action that had been resolved by arbitration.  Although the federal action had included a nearly identical foreclosure claim, the subsequent arbitration, in which defendant did not participate, proceeded only on the contract claim.  Despite the court's conclusion that the claims asserted in the two proceedings were the same cause of action for 
res
 
judicata
 purposes, it held that 
res
 
judicata
 should not be applied, because defendant failed to appear at the arbitration hearing and plaintiff there elected to proceed only on the contract claim.  Defendant, through its own default, was held to have acquiesced  in splitting the claim.  
Airtite
, 265 Ill.  App. 3d at 219.

The facts here present an even more compelling case for application of this exception than those in 
Thorleif Larsen
 and 
Airtite
.  Here, the evidence shows that the defendant not only failed to object to the plaintiff's pursuit of these premium refund claims separate from the federal litigation, but also expressly attempted  to resolve them during the federal proceedings, without objection to their inclusion in the federal case.  Under these circumstances, 
res
 
judicata
 will not be applied.

III

Saxon asserts that 
res
 
judicata
 should not be applied in this case because the policies underlying the doctrine would not be served and its application would undermine other important public policies, where Saxon, by trying to resolve these separate claims privately, was clearly attempting to avoid the need for further litigation, not harass UFM through multiple lawsuits, and UFM agreed to and encouraged resolution of these claims in this manner.  Saxon also maintains that 
res
 
judicata
 should not be applied in this case because it would be unfair and inequitable under the circumstances to deny Saxon its day in court on these claims, in light of UFM's conduct, namely its agreement through an arrangement to reduce its indebtedness through future transactions with Saxon, its repeated reassurances to do so, and its failure to object to resolution of these matters apart from the federal litigation.  Saxon maintains that the court erred in failing to find that disputed factual issues existed surrounding the application of 
res
 
judicata
, requiring denial of UFM's motion.  Saxon relates it pointed out to the circuit court that given the nature of the issues raised by UFM's motion, dismissal at this stage was, at the very least, premature, where UFM filed its motion in lieu of an answer and discovery in the case had yet to begin.  Saxon asserts the evidence before the court clearly supported Saxon's position that UFM agreed to or acquiesced in the separate resolution of these matters and supported the conclusion that it would be inequitable and unfair to apply 
res judicata
 here, particularly in light of UFM's conduct.  Saxon maintains no evidence before the court contradicts or controverts these assertions.  In light of our disposition of this appeal, articulated in the preceding points I and II, the foregoing argument need not be reached or decided.

From the foregoing, it is clear that the circuit court erred in granting UFM's section 2-619 motion to dismiss based on 
res
 
judicata
 where the doctrine does not apply to these facts.  The court's order of June 23, 1999 is reversed and the cause remanded for proceedings on the merits of Saxon's state court claims.

Reversed and remanded with directions.

THEIS, P.J., and QUINN, J., concur.

FOOTNOTES
1:
Converting assets into negotiable securities for resale in the financial market.  Blacks Law Dictionary 1358 (7
th
 ed. 1999).

2:
The identity of the particular loan transactions at issue, the amount of premium refunds sought in connection therewith, and the early pay-off date allegedly triggering the repayment obligation on the part of UFM are set forth below:

Loan 
 
 Pay-Off Date
 
Premium Refund

Smith 7/11/96 $ 8,806.88

Brennan 9/26/96 $ 8,125.00

Klebanoff 9/26/96 $12,359.22

Kurasch 10/23/96 $ 6,886.39

Golubovich 10/23/96 $13,387.50

Bassrey 4/16/97 $ 7,443.28

Siegel 4/30/97 $10,807.50

Gonzalez 4/16/98 
$ 2,640.00
 

TOTAL 
$70,455.77

3:
Specifically, Saxon alleged, among other things, in its federal complaint that:

"30. SMFC has performed all terms and conditions on its part to be performed under the Guide and the Seller/Servicer Agreement.

31. United has breached the terms, conditions, and representations and warranties of the Guide and the Seller/Servicer Agreement, in that, 
inter alia
, United sold to SMFC the Stulka loan which was not of Investment Quality and then failed to honor its repurchase and indemnification obligations."

4:
The court further stated that its adoption of the transactional test is consistent with the Restatement (Second) of Judgments' proposed approach, which is set forth as follows:

"`Dimensions of "Claim" for Purposes of Merger or Bar - General Rule Concerning "Splitting"

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar ***, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

(2) What factual grouping constitutes a "transaction", and what groupings constitute a "series", are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'"  
River Park
, 184 Ill. 2d at 311-12, quoting Restatement (Second) of Judgments §24, at 196 (1982).

The Court stated that the Restatement also provides a claim is extinguished under these principles, "`even though the plaintiff is prepared in the second action

(1)  To present evidence or grounds or theories of the case not presented in the first action, or

(2) To seek remedies or forms of relief not demanded in the first action.'"  
River Park
, 184 Ill. 2d at 312, quoting Restatement (Second) of Judgments §25, at 209 (1982).