In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 05-1649

MARK MANICKI,

*Plaintiff-Appellant*,

*v.*

BRIAN ZEILMANN and CITY OF OTTAWA,

*Defendants-Appellees*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 6374—**Charles P. Kocoras**, *Chief Judge*.

———————

ARGUED DECEMBER 2, 2005—DECIDED APRIL 11, 2006

———————

Before BAUER, POSNER, and MANION, *Circuit Judges*.

POSNER, *Circuit Judge*. Mark Manicki brought a federal civil rights suit (42 U.S.C. § 1983) that the district judge dismissed as barred by res judicata, precipitating this appeal. Manicki was in his one-year probationary period as a new police officer when he witnessed a fight between two other officers. In the ensuing criminal investigation he told investigators that one of the officers had started the fight. The police chief, defendant Zeilmann, wanted Manicki (or so the latter contends) to tell the investigators that both officers had been equally at fault, in the hope

that this would ward off any criminal prosecution of the officer, a favorite of Zeilmann's, whom Manicki had identified as the instigator. When Manicki refused to alter his statement, Zeilmann wrote a letter to the city's board of fire and police commissioners stating that Manicki had failed to perform adequately during his probationary period and should be fired—and the board fired him. In this suit, which is against both Zeilmann and the city, Manicki contends that Zeilmann's letter retaliating against him for telling the investigators the truth violated the First Amendment.

The res judicata issue arose as follows. The board had conducted no hearing before firing Manicki; it had acted solely on the basis of Zeilmann's letter. Manicki sued the board and Zeilmann in an Illinois state court, complaining that he had been fired on the basis of Zeilmann's letter, which had, the suit charged, been "made in retaliation for [Manicki's] acting as a witness in a criminal matter against another police officer and could constitute the criminal offense of Harassment of a Witness . . . . [The board had] afforded no due process prior to [Manicki's] dismissal" and its decision to dismiss him had been "against the manifest weight of the evidence," "arbitrary and capricious," and "legally erroneous." Manicki acknowledged that a probationary employee ordinarily lacks the kind of interest that entitles him to a predeprivation hearing, but contended that the collective bargaining agreement between the Ottawa police department and the department's employees created such an interest. The state court disagreed and entered judgment in favor of the defendants. That is the judgment the district court ruled bars Manicki's federal suit.

In *Krecek v. Board of Police Commissioners*, 646 N.E.2d 1314, 1317 (Ill. App. 1995), a case nearly identical to this one, the court held that a judgment determining that the plaintiff

didn't have a right to a hearing was not res judicata in her subsequent suit, which charged that her termination was retaliatory, as she would have tried to show had she been given a hearing. But *Krecek* was decided at a time when many Illinois courts applied a "same evidence" test for res judicata. Later the Supreme Court of Illinois made clear that this was not the right test, that a plaintiff is not permitted to slice up his claim into little pieces and make each the subject of a separate lawsuit based on slightly different evidence. *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893-94 (Ill. 1998); *Durgins v. City of East St. Louis*, 272 F.3d 841, 844 (7th Cir. 2001); see also *Licari v. City of Chicago*, 298 F.3d 664, 667 (7th Cir. 2002) (Illinois law).

But what exactly is a "claim" (or, in an older terminology, a "cause of action")? *River Park* adopted the prevailing definition: it is the "transaction" or (equivalently) the "operative facts" that give rise to the plaintiff's right to obtain legal relief, rather than the particular legal category or theory that shows that the transaction really does entitle him to a legal remedy. There might after all be numerous categories or theories that fit the facts (breach of contract, common law tort, violation of federal civil rights law, etc.), and they should be joined in a single suit rather than parceled out among a set of different suits based on the same facts so that if the plaintiff strikes out on one theory he can try again on another. Such a way of proceeding would impose gratuitous burdens on defendants and on the courts.

But terms like "transaction" and "operative facts" are not self-evident; indeed, it is quite unclear what "operative" is supposed to mean in this popular formulation. Language has its limits, and courts are often better at producing sensible results than at devising helpful verbal formulas. In

*Herrmann v. Cencom Cable Associates, Inc.*, 999 F.2d 223, 226 (7th Cir. 1993), we thought it a useful clarification to "suggest that two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations." This directs attention to the degree of factual overlap between assertedly different claims and hence the appropriateness of trying them together rather than separately.

In the spirit of this approach Manicki argues that there are two separate clusters of facts in this case, the first being the police board's denying him a predeprivation hearing, the subject of the state court suit, and the second (though it came first in time) being the letter by Zeilmann to the board which precipitated Manicki's dismissal and hence the filing of the first suit. But they are not really separate, except in not being simultaneous; together they constitute the circumstances of Manicki's dismissal and "form a convenient trial unit." *Mpoyo v. Litton Electro-Optical Systems*, 430 F.3d 985, 987 (9th Cir. 2005).

Manicki's dismissal was the collaborative product of Zeilmann and the board. Zeilmann writes the board a letter recommending that it dismiss Manicki, and the board, without bothering to get a response from Manicki, fires him. There were, if Manicki was correct, two constitutional violations—a procedural violation by the board in denying him a predeprivation hearing, and a substantive violation by Zeilmann in maneuvering to get Manicki fired in retaliation for refusing to alter a truthful statement to investigators. But the two violations are based on the same episode, namely the dismissal of Manicki on the basis of Zeilmann's letter, and to make each violation the subject of a separate trial would, because of the extent of the factual overlap, increase the expense of litigation without compensating benefit. In the first case, where Manicki's goal

was a hearing before the board, he wanted to present evidence of the retaliatory motive for, and consequent lack of credibility of, Zeilmann's letter to the board. In the second case, which was based squarely on Zeilmann's letter, he wanted to show that it was indeed the letter that had precipitated Manicki's dismissal by the board. Moreover, the ultimate relief sought in both cases included reinstatement, and the facts bearing on the appropriateness of that remedy (if Manicki succeeded in establishing liability) would be the same.

This is not to say that the test for res judicata is a genetic one based, that is, on the two suits' having a common source—Zeilmann's anger at Manicki's refusal to alter his account of the fight. Claims that have too little factual overlap to warrant being forced into a single suit (that is, to warrant being deemed a single "claim" for purposes of res judicata) can nevertheless have the same origin. When an employee complains about discrimination and the employer fires him in retaliation for complaining, the employee's discrimination and retaliation claims can sometimes be litigated separately even though both have a common origin in the discrimination against the employee. *Herrmann v. Cencom Cable Associates, Inc.*, *supra*, 999 F.2d at 227; *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 400 F.3d 139, 141 (2d Cir. 2005) (per curiam); *Abels v. Renfro Corp.*, 436 S.E.2d 822, 827-28 (N.C. 1993). There is bound to be evidentiary overlap, but it may be slight, because most discriminating employers do not also retaliate against complaining employees and an employer may (and in fact is likely to) retaliate against an employee who files a groundless complaint. When, however, the same action is charged as both discrimination and retaliation, the evidentiary overlap is so extensive that the plaintiff is forbidden to make each the subject of a separate suit. E.g., *Garcia v.*

*Village of Mt. Prospect*, 360 F.3d 630, 637-38 (7th Cir. 2004); *Durgins v. City of East St. Louis*, *supra*, 272 F.3d at 843 (Illinois law); *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 314 (5th Cir. 2004); *Nwosun v. General Mills Restaurants, Inc.*, 124 F.3d 1255, 1256-58 (10th Cir. 1997).

Here too, the two claims—due process and retaliation—are tightly bound together, because Manicki wanted a due process hearing so that he could prove retaliation. Imagine if instead Zeilmann had shot Manicki or tossed a Molotov cocktail into his house. No reference to that conduct would be needed to establish that Manicki had been denied a predeprivation hearing to which he was entitled.

Suppose Manicki had won his first case and thus had succeeded in getting a hearing before the board, but the board after the hearing again ruled against him. He could then, if he is right that the judgment in the state court suit was not res judicata, bring a second suit (the suit before us) against Zeilmann complaining about the letter that led to his dismissal (though depending on the ground of the board's action, Zeilmann might have a defense of collateral estoppel). In contrast, if Manicki must join both his legal theories in one suit, then if the court finds that he was dismissed in violation of his constitutional rights it can avoid having to resolve the issue of his right to a hearing; the court would order him reinstated and the issue of a hearing would be moot.

All else aside, Manicki's joining Zeilmann as a defendant in the first suit was a fatal step, though this requires some explaining. Even if a plaintiff's right to relief arises from what is realistically viewed as a single episode, if it is a right against multiple parties—joint tortfeasors, if the right arises under tort law—he needn't join them in one suit, *Airtite v. DPR Ltd. Partnership*, 638 N.E.2d 241, 247 (Ill. App.

1994); *Northern Assurance Co. of America v. Square D Co.*, 201 F.3d 84, 88-89 (2d Cir. 2000), unless there is privity among those parties, *Lawlor v. National Screen Service Corp.*, 349 U.S. 322, 330 (1955); *In re Marriage of Mesecher*, 650 N.E.2d 294, 296-97 (Ill. App. 1995), for in that event separate suits against them are treated as the equivalent of separate suits against the same party. "Privity" in this context means that because the parties have by virtue of contract or otherwise identical interests, a claim or defense by one is equivalent to a claim or defense by all. *Diversified Financial Systems, Inc. v. Boyd*, 678 N.E.2d 308, 312 (Ill. App. 1997); *In re Marriage of Mesecher*, *supra*, 650 N.E.2d at 296-97; *Garcia v. Village of Mt. Prospect*, *supra*, 360 F.3d at 636 (Illinois law). There is no privity between Zeilmann and the board. Both are agents of the city, but their interests diverge. Manicki charges them with different legal violations, and so one or the other defendant could win though the other lost.

Assuming that Zeilmann and the board acted wrongfully, as Manicki charges, they were in effect joint tortfeasors. It was their combined action that did in Manicki. Had Zeilmann not written his letter, the board would not have fired Manicki, and if the board had granted him a hearing it might well have discovered Zeilmann's retaliatory motive and, again, not fired Manicki. But Manicki sued both Zeilmann and the board in the same case, and you cannot sue all your joint tortfeasors in the same case and then when you lose sue one of them separately. That would be taking two bites at the same apple. *Frier v. City of Vandalia*, 770 F.2d 699, 702 (7th Cir. 1985) (Illinois law); *Lane v. Peterson*, 899 F.2d 737, 743 (8th Cir. 1990). And if the second suit against Zeilmann is thus barred, the suit cannot be saved by the fact that the city is also named as a defendant. The city's liability is derivative from Zeilmann's, the contention being that either Zeilmann was a

policymaker whose actions thus bound the city or that the city ratified his persecution of Manicki. *Killinger v. Johnson*, 389 F.3d 765, 771-72 (7th Cir. 2004).

Manicki argues that the defendants are precluded from invoking res judicata because they failed to warn him, when they learned that he planned to file a second suit, that such a suit would be barred by res judicata. He relies on the rule that "the failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim." *Thorleif Larsen & Son, Inc. v. PPG Industries, Inc.*, 532 N.E.2d 423, 427 (Ill. App. 1988) (quoting *Restatement (Second) of Judgments* § 26 comment a (1982)); see also *Saxon Mortgage, Inc. v. United Financial Mortgage Corp.*, 728 N.E.2d 537, 545-47 (Ill. App. 2000); *Airtite v. DPR Ltd. Partnership*, *supra*, 638 N.E.2d at 244. This rule of Illinois law does not govern the purely procedural question of what issues must be raised, and when, in a federal lawsuit. In any event, the cited cases are ones in which, by failing to raise the defense of res judicata in timely fashion, the defendant wasted the time of the plaintiff and the court. There is no duty to warn a prospective adversary of the defenses you will interpose if he carries out his threat to sue you.

AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*