# Illinois Official Reports

## Appellate Court

---

### *Dinerstein v. Evanston Athletic Clubs, Inc.*, 2016 IL App (1st) 153388

---

| | |
|---|---|
| Appellate Court Caption | MATT DINERSTEIN and ANGELA ADAMSON, Plaintiffs-Appellants, v. EVANSTON ATHLETIC CLUBS, INC., Defendant-Appellee. |
| District & No. | First District, Fourth Division<br>Docket No. 1-15-3388 |
| Filed | September 30, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-L-4527; the Hon. John P. Callahan, Judge, presiding. |
| Judgment | Vacated and remanded. |
| Counsel on Appeal | Eric D. Jackstadt, of Napoli Shkolnik PLLC, of Edwardsville, for appellants.<br><br>Timothy V. Hoffman and Nora C. Bloom, both of Sanchez, Daniels & Hoffman LLP, of Chicago, for appellee. |
| Panel | JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Justices Howse and Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1       Plaintiffs, Matt Dinerstein and Angela Adamson, appeal from the order of the circuit court of Cook County dismissing their complaint against defendant Evanston Athletic Clubs, Inc., pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2014)), as barred by *res judicata*. On appeal, plaintiffs argue that *res judicata* did not apply to their second action because no final judgment on the merits was entered in the first action. They additionally argue that, even if the technical requirements of *res judicata* were met, equity demands that the dismissal be reversed and that two recognized exceptions to claim-splitting apply.

¶ 2       We agree with the trial court that the elements of *res judicata* were met in this case. But we agree with plaintiffs that the trial court should not have dismissed the complaint because a question of fact remains as to whether one of the recognized exceptions to claim-splitting—defendant's agreement, in terms or effect, to the claim-splitting—applied under the facts of this case. We vacate the trial court's judgment and remand this matter for further proceedings on that question.

¶ 3                                    I. BACKGROUND

¶ 4       Plaintiffs, Matt Dinerstein and Angela Adamson, sued defendant, Evanston Athletic Clubs, Inc., and others for personal injuries after Dinerstein fell from the rock-climbing wall at defendant's facility (*Dinerstein I*). The complaint contained three counts against defendant: negligence, willful and wanton conduct, and loss of consortium. The trial court granted defendant's motion to dismiss the negligence count, pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2014)), based on an exculpatory agreement between defendant and Dinerstein, in which he agreed to not sue defendant for negligence. The trial court later denied plaintiffs' motion to reconsider and the case continued on the other two counts.[1]

¶ 5       On April 3, 2015, defendant's counsel filed an agreed motion to continue the trial date on the grounds that the parties had not completed discovery, including expert discovery, and that plaintiffs' assigned counsel had recently left the firm. On April 10, 2015, counsel for both parties appeared at the hearing on the motion. The motion was denied, and the parties were directed to appear for trial on April 13, 2015.

¶ 6       After leaving the courtroom, counsel for both parties discussed their mutual uncertainty as to what options were available, given that trial was less than two weeks away and they had not completed expert discovery. The conversations that followed over the next several days between opposing counsel are the subject of sharp dispute in this litigation. We can say this much here, without unnecessarily delving into detail: The parties discussed as one possibility that plaintiffs could voluntarily dismiss the action pursuant to section 2-1009(a) of the Code of Civil Procedure (735 ILCS 5/2-1009(a) (West 2014)). Defendant's counsel even e-mailed the text of section 2-1009(a) to plaintiffs' counsel. Whether defense counsel, by words or actions, indicated that she would not raise a *res judicata* objection to a refiling of the case is one of the principal issues in this case.

---

[1]The status of the other defendants is unclear and not relevant to the issues in this appeal.

¶ 7        In any event, on April 13, 2015, counsel appeared at the trial call, where plaintiffs voluntarily dismissed their complaint without prejudice. Eighteen days later, on May 1, 2015, plaintiffs filed the instant suit, which they amended on July 31, 2015 (*Dinerstein II*). Plaintiffs again alleged that Dinerstein was injured when he fell from the rock-climbing wall at defendant's facility. The refiled complaint did not contain the negligence count that had been previously involuntarily dismissed but did contain the same claims for willful and wanton conduct and loss of consortium as the complaint in *Dinerstein I*.

¶ 8        On August 20, 2015, defendant filed a motion to dismiss pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2014)). Defendant argued that the complaint in *Dinerstein II* was barred by *res judicata*. In response, plaintiffs raised several arguments: *res judicata* did not apply because there had been no final adjudication on the merits; they had not improperly split their claims because they were all brought in one action; even if the technical requirements of *res judicata* had been met, exceptions to claim-splitting applied because defendant had agreed or acquiesced to the claim-splitting and the trial court's order expressly allowed it; and equity mandated that *Dinerstein II* not be barred. Plaintiffs supported their argument—that defendant had agreed to the claim-splitting—with affidavits from their attorneys. But, in its reply, defendant submitted a counteraffidavit from its own counsel in which she stated, among other things, that she did not agree that plaintiffs could split their claims and never agreed to waive any defenses to the refiled case.

¶ 9        The trial court granted defendant's motion to dismiss the complaint in *Dinerstein II* as barred by *res judicata*. The court did not apply any exceptions.

¶ 10        Plaintiffs now appeal, again arguing that the first element of *res judicata* has not been met because the dismissal of the negligence count in the first action was not a final adjudication on the merits. Plaintiffs also argue that the trial court erred in failing to apply either of two recognized exceptions to claim-splitting. Plaintiffs also claim that equity mandates that *res judicata* should not bar the second action.

¶ 11                                    II. ANALYSIS
¶ 12                                  A. Standard of Review
¶ 13        We review *de novo* the trial court's dismissal of a complaint under section 2-619. *Cooney v. Rossiter*, 2012 IL 113227, ¶ 17. A motion to dismiss under section 2-619 admits the legal sufficiency of the complaint but asserts a defense outside the complaint that defeats it. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. Defendant's motion was specifically based on subsection (a)(9), which permits dismissal where "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2014); see also *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003). The "affirmative matter" must be apparent on the face of the complaint or supported by affidavits or certain other evidentiary materials. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997). Facts and evidence must be viewed in the light most favorable to the nonmoving party. *Saxon Mortgage, Inc. v. United Financial Mortgage Corp.*, 312 Ill. App. 3d 1098, 1104 (2000). "If it cannot be determined with reasonable certainty that the alleged defense exists, the motion should not be granted." *Id.* On appeal from an order granting dismissal under section 2-619, we ask "whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law." (Internal quotation marks omitted.) *Doyle v. Holy Cross*

*Hospital*, 186 Ill. 2d 104, 109-10 (1999) (quoting *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116-17 (1993)).

¶ 14                                        B. *Res Judicata* and Claim-Splitting

¶ 15    The issue in this case is whether the involuntary dismissal of the negligence count in *Dinerstein I*, which was followed by the voluntary dismissal of the remaining counts, bars the complaint in *Dinerstein II* based on *res judicata*. Three requirements must be satisfied for *res judicata* to apply: (1) a final judgment on the merits must have been rendered by a court of competent jurisdiction; (2) an identity of cause of action must exist; and (3) the parties or their privies must be identical in both actions. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008); *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). Plaintiffs do not dispute that the second and third elements of *res judicata* are met in this case, but they argue that the first element of *res judicata* was not met because the trial court's order dismissing the negligence cause of action in *Dinerstein I* was not a final judgment on the merits.

¶ 16    We disagree. "The principle that *res judicata* prohibits a party from later seeking relief on the basis of issues which might have been raised in the prior action also prevents a litigant from splitting a single cause of action into more than one proceeding." *Rein*, 172 Ill. 2d at 339. The rule against claim-splitting prohibits a plaintiff from suing for part of a claim in one action and then suing for the remainder in another action. *Id.* at 340. The rule is "founded on the premise that litigation should have an end and that no person should be unnecessarily harassed with a multiplicity of lawsuits." *Id.*

¶ 17    In *Rein*, our supreme court cautioned that a plaintiff's statutory right, under sections 2-1009 and 13-217 of the Code of Civil Procedure (735 ILCS 5/13-217 (West 2014)), to a voluntary dismissal within the limitations period did not "automatically immunize a plaintiff against the bar of *res judicata* or other legitimate defenses a defendant may assert in response to the refiling of voluntarily dismissed counts." *Rein*, 172 Ill. 2d at 342-43; see also *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 39.

¶ 18    Later, in *Hudson*, our supreme court explained: "*Rein* thus stands for the proposition that a plaintiff who splits his claims by voluntarily dismissing and refiling part of an action after a final judgment has been entered on another part of the case subjects himself to a *res judicata* defense." *Hudson*, 228 Ill. 2d at 473; see also *Richter*, 2016 IL 119518, ¶ 39. In *Hudson*, the court clarified that *res judicata* bars not only what was actually decided in the first action, but also whatever could have been decided. *Hudson*, 228 Ill. 2d at 467.

¶ 19    Contrary to plaintiffs' assertion, the trial court's order in *Dinerstein I*, dismissing plaintiffs' negligence action, was a final adjudication on the merits. Illinois Supreme Court Rule 273 provides that: "Unless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits." Ill. S. Ct. R. 273. As the Illinois Supreme Court recently explained in discussing this rule:

> "If a circuit court involuntarily dismisses a plaintiff's action, other than for one of the rule's three exceptions, and if the plaintiff does not procure leave of court to refile the complaint or if a statute does not guarantee that opportunity, then Rule 273 deems the dismissal to be on the merits. [Citation.] However, a dismissal 'without prejudice'

- 4 -

signals that there was no final decision on the merits and that the plaintiff is not barred from refiling the action. [Citations.]" *Richter*, 2016 IL 119518, ¶ 24.

¶ 20 Here, the trial court's involuntary dismissal of the negligence count based on the exculpatory agreement was not based on lack of jurisdiction, improper venue, or the failure to join an indispensable party. The court's order did not grant plaintiff leave to replead that count, nor did it state that the dismissal was "without prejudice." The dismissal of the negligence count was therefore a final judgment on the merits for purposes of *res judicata*.

¶ 21 Plaintiffs' numerous attempts to avoid this result fail.

¶ 22 First, they claim that the trial court's order dismissing the negligence cause of action was not a final judgment on the merits within the meaning of the holdings in *Rein* and *Hudson*, because the order did not state that the negligence count was dismissed "with prejudice." It is true that language indicating an order is "*without* prejudice" (or its functional equivalent, allowing plaintiff to replead the claim) signals that the court's decision is *not* final. *Id.* But the failure to include "with prejudice" language does not have the same effect. As we have just explained above, the opposite is true. As *Richter* prescribes, an involuntary dismissal not subject to one of Rule 273's exceptions is deemed a ruling on the merits—a final order—unless the order is explicitly entered "without prejudice" or plaintiff is permitted to replead the claim. *Id.* The absence of "with prejudice" language in the court's order here does not change the fact that the order was final.

¶ 23 Second, plaintiffs point to the dismissal order's absence of language pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010), noting that the trial court not only failed to include Rule 304(a) language but, in fact, struck that language from the proposed order—indicating, say plaintiffs, that the order was not "final" for *res judicata* purposes. But Rule 304(a) does not concern the question of whether an order is "final." Rule 304(a) *presupposes* the finality of an order in a multiclaim proceeding and provides a mechanism by which a final order that does not entirely dispose of the case may be immediately appealed—an exception to the general rule that no final order may be appealed until the entire case in the circuit court has terminated. *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 502 (1997). The presence or absence of Rule 304(a) language speaks to the timing of when the order may be appealed, not to whether that order is "final."

¶ 24 Plaintiffs next argue that this case does not involve the fact pattern considered to be claim-splitting under *Rein*. In *Rein*, 172 Ill. 2d at 327-29, they correctly note, the plaintiffs initially filed claims under the common law and for rescission. The trial court dismissed their rescission counts and denied them Rule 304(a) language, thus preventing them from immediately appealing the dismissal order. *Id.* at 329-30. The plaintiffs then voluntarily dismissed their common-law counts so that they could appeal the dismissal of their rescission claims immediately, while at the same time the plaintiffs refiled their complaint in circuit court to restart their litigation on the common-law claims. *Id.* at 336-37.

¶ 25 Plaintiffs are correct that the fact pattern here is different—that in this case, plaintiffs did not voluntarily dismiss their willful and wanton and loss of consortium counts "in order to pursue an appeal of the negligence counts." But that "is a distinction without a difference" because, as our supreme court in *Hudson* explained, the "subjective motivation in taking a voluntary dismissal is not part of a *res judicata* analysis." *Hudson*, 228 Ill. 2d at 478.

¶ 26 Finally, we agree with defendant that the fact that plaintiffs filed *Dinerstein II* before the expiration of the time they could have filed a notice of appeal in *Dinerstein I* had no bearing on

the finality of the order dismissing plaintiffs' negligence cause of action. See *Dubina*, 178 Ill. 2d at 504. Once the voluntary dismissal order was entered, all previously entered final orders—here, the order dismissing plaintiffs' negligence count—became immediately appealable. *Id.* at 503. The timing of plaintiffs' refiled action did not affect the finality of the order entered in the first action.

¶ 27 All of the elements of *res judicata*, including the first element, have been satisfied. Thus, *Dinerstein II* was barred by *res judicata*, unless an exception to the rule against claim-splitting applies. We take up that question next.

¶ 28 C. Exceptions to Claim-Splitting

¶ 29 Plaintiffs argue that, even if the technical requirements of *res judicata* have been met, certain recognized exceptions to the rule against claim-splitting apply to the facts presented here, and equity mandates that *Dinerstein II* not be barred. Our supreme court has adopted the six exceptions to claim-splitting set forth in section 26(1) of the Restatement (Second) of Judgments (Restatement (Second) of Judgments § 26(1) (1982)), which details situations in which it would be inequitable to apply the rule against claim-splitting. See *Rein*, 172 Ill. 2d at 341; *Hudson*, 228 Ill. 2d at 472-73. Under section 26(1) of the Restatement (Second) of Judgments, the rule against claim-splitting does not apply to bar an independent claim of part of the same cause of action if:

"(1) the parties have agreed in terms or in effect that plaintiff may split his claim or the defendant has acquiesced therein; (2) the court in the first action expressly reserved the plaintiff's right to maintain the second action; (3) the plaintiff was unable to obtain relief on his claim because of a restriction on the subject-matter jurisdiction of the court in the first action; (4) the judgment in the first action was plainly inconsistent with the equitable implementation of a statutory scheme; (5) the case involves a continuing or recurrent wrong; or (6) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason." *Rein*, 172 Ill. 2d at 341 (citing Restatement (Second) of Judgments § 26(1)(a)-(f) (1982).

Plaintiffs contend that the first two exceptions apply here—that defendant agreed or acquiesced to the claim-splitting and that the court expressly reserved plaintiffs' right to maintain the second action.

¶ 30 1. Standard of Review

¶ 31 Before we take up the first exception, we must clarify our standard of review. Defendant says that we should review the trial court's decision under the deferential manifest weight of the evidence standard. Defendant claims that, in finding that defendant did not agree to or acquiesce in the claim-splitting, the trial court made findings of fact, "weighed" the affidavits, and made credibility determinations.

¶ 32 Had the trial court conducted an evidentiary hearing on the questions of agreement or acquiescence, we would concur with defendant that any resulting findings of fact would be reviewed under the manifest weight standard. See, *e.g.*, *Law Offices of Nye & Associates, Ltd. v. Boado*, 2012 IL App (2d) 110804, ¶ 17 (noting that trial court heard evidence that no agreement to split claims existed, and its findings to that effect were not against manifest

weight of evidence). But that is not what occurred below. The trial court entered its order based on argument and the competing affidavits.

¶ 33 The manifest weight standard is inappropriate in this context because the trial court is not permitted to weigh competing affidavits, determine that one is more credible or persuasive than the other, or resolve any disputed issues of material fact. See *Glass Specialty Co. v. Litwiller*, 147 Ill. App. 3d 653, 655 (1986) ("Where conflicting affidavits in support of a section 2-619 motion are presented to a trial court" "[i]t is improper to simply weigh the conflicting affidavits."). In deciding the merits of a section 2-619 motion, " 'a trial court cannot determine disputed factual issues solely upon affidavits and counteraffidavits. If the affidavits present disputed facts, the parties must be afforded the opportunity to have an evidentiary hearing.' " *In re Marriage of Vaughn*, 403 Ill. App. 3d 830, 836 (2010) (quoting *A.F.P. Enterprises, Inc. v. Crescent Pork, Inc.*, 243 Ill. App. 3d 905, 913 (1993)). The trial court's only purpose in reviewing the affidavits is to determine whether a genuine dispute over a material fact exists. If it does, that factual dispute must be resolved in an evidentiary hearing, either at that time or reserved for trial, before the law can be applied to those facts. 735 ILCS 5/2-619(c) (West 2014); *Marriage of Vaughn*, 403 Ill. App. 3d at 836; *Crescent Pork*, 243 Ill. App. 3d at 913.

¶ 34 When a court considers a section 2-619 dismissal based on argument and affidavits, and not following an evidentiary hearing, our review is *de novo*. *Gonnella Baking Co. v. Clara's Pasta di Casa, Ltd.*, 337 Ill. App. 3d 385, 388 (2003). We sit in precisely the same position as the trial court, with precisely the same role, reviewing only the record. *Id.* Here, the court's role is to determine whether a genuine dispute of material fact exists and, if not, whether the movant is entitled to judgment as a matter of law. See *Kedzie*, 156 Ill. 2d at 116-17. We will apply *de novo* review to plaintiff's claim that the first exception to *res judicata* is applicable here.

¶ 35 With the appropriate standard of review in mind, to determine the applicability of the first Restatement exception to the bar on claim-splitting, we must first spell out in detail the facts asserted below by each of the parties.[2]

¶ 36                                    2. Facts at Issue

¶ 37 The undisputed facts include the following. In *Dinerstein I*, the court set a trial date of April 13, 2015. On April 3, 2015, defendant's counsel filed an agreed motion to continue the trial date on the grounds that the parties had not completed discovery, including expert discovery, and that plaintiffs' assigned counsel had recently left the firm. On April 10, 2015, counsel for both parties appeared at the hearing on the motion. The motion was denied, and the parties were directed to appear for trial on April 13, 2015.

---

[2]Although the record does not contain a transcript of the proceedings from the trial court's hearing on defendant's motion to dismiss, we have explained that "[w]here we have all of the underlying submissions of fact from which the trial court would ascertain whether a genuine issue of fact exists, we are free under our *de novo* standard of review to make our own determinations of law." *Watkins v. Office of the State Appellate Defender*, 2012 IL App (1st) 111756, ¶ 19. "Since this court reviews *de novo* an order of dismissal pursuant to section 2-619 [citation], we do not need the transcripts of the hearing below to review the propriety of the circuit court's dismissal." *Id.* ¶ 20.

¶ 38    In the record before us are three affidavits, two from plaintiffs' attorneys and one from defendant's counsel, describing what took place after the court denied their agreed motion to continue the trial date.

¶ 39    One of plaintiffs' counsel stated in his affidavit that, immediately after the parties' motion for continuance was denied, he had a conversation with defense counsel, in which "[t]he option of securing a voluntary dismissal without prejudice, *so the case could be refiled* and the trial date would be avoided, was brought up." (Emphasis added.) He further stated that defendant's counsel "indicated to me that this was a *viable option that she was agreeable to*." (Emphasis added.) Defense counsel then emailed him a copy of the section of the Code of Civil Procedure providing for voluntary dismissals. He stated that "it was my understanding from my communications with [defense counsel], that she, on behalf of her client ***, was in agreement that the plaintiffs' case could be refiled if voluntarily dismissed without prejudice and that the case would simply pick up where we left off." This attorney stated that "[h]ad [defense counsel] not so agreed, plaintiffs would have proceeded to trial on April 13, 2015."

¶ 40    The other plaintiffs' attorney swore to similar facts in his affidavit. He stated that after the motion for continuance was denied, defense counsel discussed a voluntary dismissal without prejudice "so that the case could be refiled." Counsel said that he was aware of the option of voluntary dismissal, but that "plaintiffs would not do so unless there was an agreement with the defendant that they could refile their case without consequences." Counsel then spoke with defense counsel on April 10, where they discussed the options of going to trial in five days or "agreeing to the voluntary dismissal of the action without prejudice so that the case could be refiled." He stated that defense counsel informed him that the case was not ready for trial, as the exchange of expert reports and the depositions of expert witnesses had not yet taken place. Defense counsel, according to plaintiffs' counsel, "agreed to the voluntary dismissal of the action without prejudice so that the case could be refiled. Additionally, [defense counsel] suggested mediation following the exchange of plaintiffs' expert reports in the refiled case." Plaintiffs' counsel stated that, had defense counsel not so agreed, "plaintiffs would have proceeded to trial on April 13, 2015."

¶ 41    Defense counsel's affidavit, not surprisingly, relates a somewhat different version of events. Outside the courtroom following the denial of the motion for continuance, opposing counsel each called colleagues in their respective offices and then regrouped to discuss their options. Defense counsel stated that she told plaintiff's counsel that "the options available were to proceed to trial on Monday, April 13, 2015 or Plaintiffs could voluntarily dismiss the case under the statute allowing for voluntary dismissal." Defense counsel stated, "I did not suggest to [plaintiff's counsel] that I had a preference for either option." She admitted emailing him the text of section 2-1009 (a copy of which email is in the record). She stated that later in the morning, she spoke by phone with one of the plaintiff's attorneys (whose affidavit is recounted in the preceding paragraph), swearing that, "We also discussed the state of discovery with the case and [plaintiff's counsel] suggested that after the parties exchange expert discovery, the case might be positioned for a settlement conference or mediation." Defense counsel stated that she did not know which option plaintiff's counsel would choose and asked for a decision as soon as possible, given the looming trial date. In the meantime, defense counsel began preparing for trial.

¶ 42    Defense counsel concluded her affidavit as follows:

- 8 -

"I did not discuss with [either of plaintiffs' attorneys] what would occur if Plaintiffs elected to voluntarily dismiss and later refile the case. We merely discussed the option provided by [section] 2-1009. I had no knowledge of what claims Plaintiff's [*sic*] counsel might elect to appeal or refile. We never discussed the content of the new case that might be re-filed. I did not discuss with [either of plaintiffs' attorneys] the possibility of claim-splitting. We also did not discuss any defense that may be raised in response to a re-filed case. I was not asked by [either of plaintiffs' attorneys] to obtain my client's approval or agreement that the case could be re-filed. I was not asked by [either of plaintiffs' attorneys] to waive any defenses. I did not agree with [either of plaintiffs' attorneys] that Plaintiffs' [*sic*] could split their claims ***. I never discussed with [either of plaintiffs' attorneys] what counts could or could not be re-filed. I never agreed to waive any defenses to any re-filed suit."

¶ 43                          3. Application of Law to Facts

¶ 44    We now consider whether the facts before the trial court fit within the first Restatement exception to the bar on claim-splitting, where "[t]he parties have agreed in terms *or* in effect that plaintiff may split his claim, *or* the defendant has acquiesced therein." (Emphases added.) Restatement (Second) of Judgments § 26(1)(a) (1982). Our supreme court has stated, in *dicta*, that "if an attorney is considering taking a voluntary dismissal after a final judgment has been entered on part of his case, he can seek the defendant's acquiescence in the refiling. If the defendant is unwilling to do so, then the attorney will know that he proceeds at his peril." *Hudson*, 228 Ill. 2d at 479. But, as this court later explained, "the defendant's express consent to the refiling would constitute an agreement, not an acquiescence. They are discrete concepts." *Piagentini v. Ford Motor Co.*, 387 Ill. App. 3d 887, 896 (2009).

¶ 45    Indeed, the use of the disjunctive "or" indicates that the phrase "the parties have agreed in terms *or* in effect that plaintiff may split his claim *or* the defendant has acquiesced therein" includes three distinct concepts: agreements in terms, agreements in effect, and acquiescence. See *Loughrin v. United States*, 573 U.S. ___, ___ , 134 S. Ct. 2384, 2390 (2014) (word "or" in its "ordinary use is almost always disjunctive, that is, the words it connects are to be given separate meanings" (internal quotation marks omitted) (quoting *United States v. Woods*, 571 U.S. ___, ___, 134 S. Ct. 557, 567 (2013))); *In re E.B.*, 231 Ill. 2d 459, 468 (2008) ("Generally, use of the disjunctive indicates alternatives and requires separate treatment of those alternatives ***." (Internal quotation marks omitted.) (quoting *Tietema v. State*, 926 P.2d 952, 954 (Wyo. 1996))).

¶ 46    The parties are not particularly helpful in distinguishing between these three concepts. The Restatement and case law provide some guidance. We consider each exception in turn.

¶ 47                                a. Acquiescence

¶ 48    The exception for "acquiescence" is not applicable here. As *Piagentini* explained, the comments to the Restatement indicate that "acquiescence" means a defendant's failure to object to the claim-splitting. *Piagentini*, 387 Ill. App. 3d at 897; Restatement (Second) of Judgments § 26 cmt. a (1982) ("The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim."). The time to object to a claim-splitting is not at the time of the voluntary dismissal; a defendant has almost no basis to object to a first-time voluntary dismissal, and certainly not on *res judicata* grounds,

before plaintiffs have even refiled the action. *Rein*, 172 Ill. 2d at 342 ("the fact that defendants failed to object to plaintiffs' voluntarily dismissing the common law counts cannot be equated with defendants' acquiescing to plaintiffs' refiling of these counts. Until plaintiffs attempted to refile the common law counts, no reason existed for defendants to object."); *Quintas v. Asset Management Group, Inc.*, 395 Ill. App. 3d 324, 334 (2009) ("We agree that defendants were under no obligation to object at the time of the voluntary dismissal. The appropriate time to object is when the action is refiled."); *Piagentini*, 387 Ill. App. 3d at 897-98.[3]

¶ 49 Thus, an "acquiescence" is the failure to object to claim-splitting once the action is refiled, not an agreement in advance of that refiled action. *Piagentini*, 387 Ill. App. 3d at 897-98; see also *Thorleif Larsen & Son, Inc. v. PPG Industries, Inc.*, 177 Ill. App. 3d 656, 662-63 (1988).

¶ 50 That exception is not applicable here, as defendant's first responsive pleading in the refiled action raised the *res judicata* bar. *Cf. Piagentini*, 387 Ill. App. 3d at 898 (defendant acquiesced in claim-splitting when it failed to file a timely objection and instead waited 3½ years after action was refiled before filing a motion for summary judgment on *res judicata* grounds), and *Thorleif Larsen*, 177 Ill. App. 3d at 662-63 (defendant acquiesced to separate lawsuit when it filed answer and affirmative defenses in that suit without mentioning *res judicata* and engaged in pretrial discovery, only later raising *res judicata* in motion for summary judgment). Defendant did not acquiesce to the claim-splitting.

¶ 51 The facts at issue in this case focus almost exclusively on the interactions between plaintiff's and defendant's attorneys *before* the action was refiled. We will thus consider whether plaintiffs have established, or raised a genuine issue of fact as to whether they established, an "agreement in terms or effect" to the refiling of their claims.

¶ 52             b. Agreement in Terms

¶ 53 As we have already discussed, an "agreement in terms" to claim-splitting, by definition, would be something that happened before the refiling, in contrast to acquiescence. See *Piagentini*, 387 Ill. App. 3d at 896-97. An "agreement in terms" could only mean that the parties *explicitly* agreed that the defendant would not object to the plaintiff's refiled action on *res judicata* grounds. See *id.* at 896 ("the defendant's *express* consent to the refiling would constitute an agreement" (emphasis added)). Comment a to the applicable Restatement section provides that "[t]he parties to a pending action may agree that some part of the claim shall be withdrawn from the action with the understanding that the plaintiff shall not be precluded from subsequently maintaining an action based upon it." Restatement (Second) of Judgments § 26 cmt. a (1982). That example squares with our interpretation of "agreement in terms" of an *expressed* understanding between the parties, prior to refiling, that the plaintiff could refile without an objection based on *res judicata*.

¶ 54 The competing affidavits detailed above present a sharply divided dispute over whether defendant "agreed in terms" to the splitting of claims. Each plaintiff's attorney swore that defense counsel specifically agreed to a refiling of the claim, and defense counsel specifically swore that she did not. On these competing facts, we could not rule one way or the other as a

_____

[3]Our discussion of the appropriate time to object in this paragraph is limited to the first Restatement exception. If, at the time a plaintiff voluntarily dismisses the first action, he seeks to invoke the Restatement's *second* exception by requesting that the trial court *expressly* reserve his right to refile a second action, the defendant obviously would have to object to the refiling at that time.

matter of law as to whether the parties agreed in terms to a refiling of the lawsuit, nor could the trial court. An evidentiary hearing is required. See *Marriage of Vaughn*, 403 Ill. App. 3d at 836.

¶ 55                                c. Agreement in Effect

¶ 56        The final part of this three-headed first Restatement exception is whether the parties "agreed in effect" to the claim-splitting. "Agreement in effect" is more elusive of precise definition than the other two parts. It must be something short of full-fledged, express consent to the refiling—otherwise it would be an "agreement in terms"—and it must occur prior to the refiling—otherwise it would be acquiescence.

¶ 57        The closest thing we see as Illinois precedent is *Saxon*, 312 Ill. App. 3d 1098. There, Saxon sued UFM in federal court over the investment quality of mortgages that UFM sold to Saxon. *Id.* at 1102. During the pendency of that federal action, Saxon and UFM engaged in lengthy negotiations over a related issue—whether Saxon was entitled to a refund of premiums over certain mortgages purchased from UFM because they were paid off early. *Id.* at 1102-03. UFM repeatedly indicated its desire to find a solution in those negotiations, but when they broke off and Saxon sued in Illinois state court over the premium-refund issue, UFM moved to dismiss based on *res judicata*. This court rejected the claim of *res judicata*, finding that the claims did not arise from the same transaction as the federal action, but relevant to our case, this court further found that even if *res judicata* applied, Saxon could successfully invoke the exception for an agreement in effect:

> "In this regard, the facts before the circuit court demonstrated that UFM agreed to the resolution of the premium refund obligations separately from the dispute at issue in the federal action ***, as evidenced from UFM's own statements, as well as its actions concerning the resolution of these claims. A series of letters reflect that these efforts toward accommodation continued throughout the time the federal court action was pending and at least up until September 3, 1998, shortly before the entry of summary judgment in that case. UFM's attempts to resolve these matters through future transactions, without objection at any time during pendency of the federal suit, constitutes an agreement to the splitting of these claims *** or, at the very least, demonstrates that it acquiesced in the splitting of these claims by Saxon ***." *Id.* at 1110.

¶ 58        While the court in *Saxon* made the reference to "acquiescence" in *dicta*, that case was decided prior to the clarification in *Piagentini* that "acquiescence" pertains to the defendant's conduct *after* the filing of the second lawsuit. We believe that *Saxon's* discussion of an agreement in effect remains helpful. As far as the concept of an "agreement in effect" is concerned, *Saxon* would stand for the general proposition that, when a defendant engages in conduct that implies the viability of a claim separate and apart from the pending lawsuit, the defendant agrees in effect to the litigation of that claim in a separate lawsuit.

¶ 59        It is critical to note, however, that mere silence alone cannot be sufficient to establish an "agreement in effect." *Acquiescence* could be mere silence—the failure to object—after an action is refiled, because by doing nothing, the defendant is allowing the claim-splitting to go forward. But on the front end, *before* the action is refiled, while plaintiff's counsel is pondering a voluntary dismissal, defense counsel's mere silence on the topic is different. Under our adversarial system, counsel for one party is under no obligation to dispense legal advice to

assist opposing counsel, nor is she required to disclose in advance the legal steps she might take in response to a legal maneuver undertaken by opposing counsel. See, *e.g.*, *Klancir v. BNSF Ry. Co.*, 2015 IL App (1st) 143437, ¶ 32 (defendant was not equitably estopped from asserting statute of limitations defense upon plaintiff's refiling of claim, as defendant's counsel "cannot be said to have improperly concealed material facts simply by failing to alert opposing counsel, in advance, of law bearing on his case" (internal quotation marks omitted) (quoting *Greene v. Helis*, 252 Ill. App. 3d 957, 962 (1993))); *Manicki v. Zeilmann*, 443 F.3d 922, 927 (7th Cir. 2006) ("There is no duty to warn a prospective adversary of the defenses you will interpose if he carries out his threat to sue you.").

¶ 60    Simply put, a defendant is not obligated to stop a plaintiff from making a fatal mistake. As the supreme court has noted, an attorney considering a voluntary dismissal after a final judgment has been entered on part of the case would be wise to seek consent in advance on the issue of refiling, and plaintiff's counsel "proceeds at his peril" if he does not obtain that consent. *Hudson*, 228 Ill. 2d at 479. To preserve the principles of our adversarial system, the law must recognize a qualitative difference between a defense attorney making no representations, one way or the other, concerning a plaintiff's right to refile her claim and that defense attorney engaging in conduct that, while falling short of express consent (an "agreement in terms"), implies that the defendant will not object to a refiling of the claim based on *res judicata*.

¶ 61    With all of this in mind, we believe that an "agreement in effect" must mean conduct by defense counsel, before the plaintiff voluntarily dismisses the case, that implies that the defendant will not object to claim-splitting when the action is refiled. Silence alone is not enough. Agreement or nonobjection to the *voluntary dismissal* is not enough. The defendant, in word or deed, must imply that the defendant will not object to the claim-splitting if and when the action is refiled.

¶ 62    The question of whether defense counsel in this case "agreed in effect" to the refiling of the lawsuit is a close question, but we again believe that resolution of the question is best suited to an evidentiary hearing. The affiants, to some extent, speak past each other. Plaintiffs' affidavits claim that the topic of refiling was specifically raised and that defense counsel agreed to the refiling; defense counsel said the topic never even came up, not explicitly. Plaintiffs' counsel said defense counsel even brought up the idea of mediation upon refiling of the case—which she would not do if she were planning to object to the refiled case on grounds of *res judicata*—but defense counsel said that plaintiff's counsel raised the topic of mediation, without mentioning what, if anything, she said in response. Defense counsel did admit that they discussed the state of discovery, which again would imply that there was a plan to pick up where the parties left off upon refiling.

¶ 63    Arguably, the affidavits present sufficient evidence for us to conclude that defendant did, in fact, agree in effect to the claim-splitting. After all, defense counsel concedes she brought up the option of voluntary dismissal herself and actually sent the text of the voluntary dismissal statute to opposing counsel. And as we just mentioned, she further concedes that the topic of future discovery was discussed, implying that a refiled lawsuit would be viable. It is also at least arguable that defense counsel wanted the voluntary dismissal as much as plaintiff's counsel, that defendant was in just as vulnerable a position as plaintiff following the denial of their motion for continuance, each side finding itself without an expert to use at trial. All of

these facts would tend to suggest that defense counsel implied a willingness to move forward with a refiled case.

¶ 64    But in the end, the facts are sufficiently contested on the material points to convince us that we are not in the proper position to resolve this dispute based on documentary evidence alone. This is a case that cries out for an evidentiary hearing, with each side putting a fine point on their positions and leveling pointed questions to the opposing witnesses. We would further note, in fairness to the able trial judge, that the interpretation of "agreement in effect" had not been considerably fleshed out in the case law in this state, and hopefully this opinion will assist the trial court in applying the law once the facts have been resolved.

¶ 65                              d. Other Exceptions

¶ 66    Plaintiffs have also raised the Restatement's second exception, arguing that the trial court in the first action expressly reserved plaintiffs' right to maintain the second action "[b]ecause there was no final order with prejudice at the time *Dinerstein I* was dismissed without prejudice." Plaintiffs cite no authority for this proposition. And we have already rejected plaintiffs' argument that the order dismissing plaintiff's negligence claim was not a final order. Unless an exception applied, *Dinerstein II* was barred by *res judicata*. The Restatement's second exception does not apply here because the trial court in *Dinerstein I* did not reserve plaintiffs' right to maintain the second action, expressly or otherwise, merely by allowing plaintiff to voluntarily dismiss *Dinerstein I* without prejudice. *Rein*, 172 Ill. 2d at 342 ("the trial judge's granting plaintiffs' motion to voluntarily dismiss the common law counts without prejudice under section 2-1009 should not be interpreted as immunizing plaintiffs against defenses defendants may raise when the voluntarily dismissed counts were refiled").

¶ 67    Plaintiffs have also argued that general equitable principles preclude strict application of *res judicata*. But plaintiffs' argument is based on their contention that defendant consented to the dismissal of *Dinerstein I* with the agreement that the case would be refiled. This is the same argument we have already addressed with respect to the Restatement's first exception. Plaintiffs have failed to present any other "equitable" reason for reversing the trial court's decision.

¶ 68    Thus, on remand, the only questions before the trial court will be whether the parties agreed in terms or in effect to the claim-splitting.

¶ 69                              III. CONCLUSION

¶ 70    The circuit court properly ruled that this refiled action was barred, in the first instance, by *res judicata*. But we vacate the judgment of the circuit court and remand the cause for an evidentiary hearing on the questions of whether there was an "agreement in terms" or an "agreement in effect" to the claim-splitting.

¶ 71    Vacated and remanded.