# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *Kantner v. Waugh*, 2017 IL App (2d) 160848

</div>

| | |
|---|---|
| Appellate Court Caption | ROBERT KANTNER, Plaintiff-Appellant, v. LADONNA JO WAUGH, a/k/a Ladonna Jo Bryan, a/k/a Ladonna Farrow, Individually and as Agent of Mercy Health System Corporation; MERCY HEALTH SYSTEM CORPORATION; MERCY HARVARD HOSPITAL, INC.; MERCY CENTER FOR METABOLIC AND BARIATRIC SURGERY; and MERCY ALLIANCE, INC., Defendants-Appellees. |
| District & No. | Second District<br>Docket No. 2-16-0848 |
| Filed<br>Rehearing denied | June 12, 2017<br>July 13, 2017 |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 16-LA-51; the Hon. Thomas A. Meyer, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Cynthia J. Koroll, of Koroll Litigation Group, Ltd., of Rockford, and Nathan Reyes, of Bruning & Associates, P.C., of Crystal Lake, for appellant.<br><br>David P. Faulkner and Michael J. Orsi, of Faulkner Gustafson, LLC, of Rockford, for appellee Ladonna J. Waugh.<br><br>Philip E. Wand, of Wand Lee Wombacher, LLC, of Woodstock, for other appellees. |

Panel                           JUSTICE JORGENSEN delivered the judgment of the court, with opinion.

Justices Burke and Schostok concurred in the judgment and opinion.

## OPINION

¶ 1   The trial court dismissed on grounds of *res judicata* the medical malpractice suit filed by plaintiff, Robert Kantner, against defendants, Ladonna Jo Waugh, Mercy Health System Corporation, Mercy Harvard Hospital, Inc., Mercy Center for Metabolic and Bariatric Surgery, and Mercy Alliance, Inc. The court noted that *res judicata* bars claim-splitting, and it determined that plaintiff split his claims. It stated that, under the instant facts, no exception to *res judicata*'s bar against claim-splitting applied. Plaintiff appeals, acknowledging that he split his claims, but arguing, *inter alia*, that the agreement-in-effect exception applied. We agree. The trial court misunderstood the law to require an express agreement. Accordingly, we reverse and remand.

## I. BACKGROUND

¶ 2

¶ 3   In 2008, plaintiff filed a multi-count medical malpractice suit against defendants based on permanent injuries following bariatric surgery. Specifically, plaintiff set forth counts alleging (1) informed consent and (2) negligence. In 2009, defendants moved to dismiss the informed-consent claim, and the trial court granted their motion. Plaintiff proceeded to trial on the negligence claim.

## A. December 7, 2015

¶ 4

¶ 5   On December 7, 2015, before the first day of trial began, plaintiff moved to continue. Two business days earlier, on December 3, 2015, plaintiff's counsel had been battered by her son, a military veteran returned from Afghanistan. The court and the parties discussed the basis for the continuance off the record.

¶ 6   Back on the record, defense counsel objected to the continuance: "We're not unsympathetic, Judge. But we do object." Defense counsel noted that plaintiff's counsel had not given him notice that she would ask for a continuance. Defense counsel was concerned that his experts would charge a cancellation fee.

¶ 7   The court "tipped its hand," stating that it would grant the continuance, provided that plaintiff assumed the associated cancellation fees. The court told plaintiff to choose the course of action, either continue the case and assume the cancellation fees or go to trial. Plaintiff's counsel stated: "I don't know what to do. I mean, am I talking $10,000? Am I talking [$1000]? What am I talking?" Plaintiff's counsel complained that defense counsel sought "*carte blanche*" to collect an indeterminate fee amount. Defense counsel stated that he could not provide an estimate; he was just preserving his clients' rights. The court prodded, "some experts tell you what their cancellation fee is going to be." Defense counsel answered: "I don't get involved in that. That's my secretary. *** There may not be any. I don't know at this point." The court again asked plaintiff's counsel what she wanted to do:

"[Plaintiff's Counsel]: I mean, I don't know what to do, to tell you the truth. I don't.

\* \* \*

[Plaintiff's Counsel]: My—my client's certainly not going to pay any of these [cancellation fees]. I'm going to have to take this on. This is not through any of my client's fault.

\* \* \*

[Defense Counsel 1]: And I think *we have offered* to not object to a motion to voluntarily dismiss this case. And we would not seek any reimbursement on costs now *or upon refiling*.

[Plaintiff's Counsel]: So how's that any different?

THE COURT: It's cheaper.

[Plaintiff's Counsel]: But the question is[,] how quickly can I get it back up for trial if we do that?

THE COURT: \*\*\* As soon as you got the case back in front of me, I would set it for trial because there's—there is no need for further discovery. [*Vis-a-vis* the continuance option, if you voluntarily dismiss and refile,] you would go to trial probably at the same time or thirty days later \*\*\*.

\*\*\*

[Plaintiff's counsel asked for a moment to confer with plaintiff. The court again assured plaintiff's counsel that the trial date would be approximately the same under either the continuance option or the voluntarily-dismiss-and-refile option. Based on its calendar, that date would be in late September 2016.]

\*\*\*

[Plaintiff's Counsel]: \*\*\* [Then], I guess that we will voluntarily dismiss.

THE COURT: Okay.

[Defense Counsel 1]: We'll prepare an order.

THE COURT: Okay.

[Plaintiff's Counsel]: As long as \*\*\* the order reflects that there would be no costs [now or upon refiling].[1]

THE COURT: No costs?

[Defense Counsel 1]: We agree.

[Defense Counsel 2]: We agree." (Emphases added.)

The court granted plaintiff's motion to voluntarily dismiss his negligence claim. The order, drafted by defendants, stated: "On plaintiff's oral motion and by agreement of the parties, the case is voluntarily dismissed pursuant to statute 735 ILCS 5/2-1009 [(West 2014)] with no costs assessed." The order did not include the words "upon refiling."

---

[1]The trial court later determined that, given the context of the preceding discussion, plaintiff's request effectively included the words "now or upon refiling." *Infra* ¶ 13.

¶ 8                      B. Plaintiff's Refiling and Defendants' *Res Judicata* Defense

¶ 9            On February 11, 2016, plaintiff refiled his negligence claim. On March 11, 2016, defendants moved to dismiss the refiled claim pursuant to the *res judicata* doctrine. They argued that plaintiff had violated the doctrine's rule against splitting claims. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008). Per *Hudson*, defendants argued the court's 2009 involuntary dismissal of the informed-consent claim, followed by the 2015 voluntary dismissal of the negligence claim, barred a subsequent refiling of the negligence claim.

¶ 10           On June 14, 2016, the court conducted a hearing on defendants' motion to dismiss. Plaintiff's counsel conceded that, per *Hudson*, she split plaintiff's claims, an action prohibited by the *res judicata* doctrine. She argued, however, that *res judicata* should not bar refiling where, in December 2015, defendants submitted "an unsolicitated offer" to accept a voluntary dismissal and to waive costs *upon refiling*. After that offer, she had asked, "how would that be different [from a continuance?]" The court answered that it would be "cheaper" than a continuance but that the trial could be conducted on approximately the same date in late September 2016. Plaintiff's counsel was given the opportunity to confer with plaintiff, and relying on everything defendants and the court had stated, she decided to voluntarily dismiss with the intention of refiling. "It [was] an offer by the defense. We accepted it."

¶ 11           Defendants, citing *Matejczyk v. City of Chicago*, 397 Ill. App. 3d 1, 10-11 (2009), argued that their conduct at the December 2015 hearing did not excuse the refiling from *res judicata*'s bar against claim-splitting. In defendants' view, *Matejczyk* stood for the proposition that, for an exception to *res judicata*'s rule against claim-splitting to apply, "the [voluntary] dismissal order must be written with an exception to claim-splitting in mind." Further, "the exception only applies when there is an *express* reservation," and "this exception about allowing a plaintiff to refile, it needs to be *expressly* reflected in the transcript or in the order." (Emphases added.) Defendants provided the court with two pages of the *Matejcyzk* opinion. Plaintiff objected: "I'm always uncomfortable when only two pages of a case are handed up to the court." The court stated that it had previously read the entire case.

¶ 12           The court acknowledged that, contrary to *Matejczyk*, it was not mindful of the *res judicata* doctrine when it offered the September 2016 trial date upon refiling. Plaintiff's counsel acknowledged that she had not contemplated the *res judicata* doctrine specifically, but she had sought repeated assurances that upon voluntary dismissal and refiling the case would proceed to trial. "I mean, was there any doubt that we were going to be back to trial?" She argued again that, in the "spirit of the defense's kind offer [in December 2015]," the refiling should be allowed.

¶ 13           The court disagreed. It determined that, per *Matejczyk*, defendants' agreement must be express: "There was no *explicit* agreement or offer that [defendants] would waive anticipated future defenses," and "[a]ll that [defendants did] is *explicitly* waiv[e] the right to reimbursement of costs on [re]filing, and I can't expand beyond what is *explicitly* said in order to ultimately agree with plaintiff's contention. So, I believe *Matejczyk* gives me the guidelines here, and *** I must dismiss this case with prejudice." (Emphases added.)

¶ 14           Plaintiff's counsel interjected mid-pronouncement to remind the court of the December 2015 circumstances prompting her initial request for a continuance:

"I do want to get on the record it wasn't a simple matter ***. I was battered by my son *** and I had a head injury and a finger fracture. *** I think you saw my head was blackened and blue. My hand was black and blue. *** I didn't want to go forward with a severe bruising o[n] my face and hand in front of a jury. *** [N]ot only was it a physical battery, but the emotional aspect of battery."

(Defense counsel stated that he did not remember the physical injuries.) Plaintiff's counsel further informed the court that she had consulted with a trusted, senior attorney who told her that he "would never proceed" under similar circumstances; "It wouldn't be fair to [the] client."

¶ 15 The court then stated that it had "agreed completely" with plaintiff's counsel; that is why it had not required her to go into detail on the record. It "sympathized" with plaintiff, stating that the *res judicata* dismissal was "unfortunate" and that it would have "preferred not" to reach that result. It concluded, again, however: "I think *Matejczyk* controls what I must do." This appeal followed.

¶ 16                                  II. ANALYSIS

¶ 17 Plaintiff concedes that, absent an exception, the *res judicata* doctrine's rule against claim-splitting bars the 2016 refiling of his negligence claim. When, in 2009, the court involuntarily dismissed his informed-consent claim, plaintiff was required, absent an exception, to pursue a resolution of the negligence claim without the interruption of a second dismissal or subject himself to a *res judicata* defense. *Hudson*, 228 Ill. 2d at 473. Plaintiff contends, however, that three exceptions apply: (1) the parties have agreed in terms or *in effect* that the plaintiff may split his claim or the defendant acquiesced therein, (2) the court in the first action expressly reserved the plaintiff's right to maintain the second action, and (3) equitable estoppel. For the reasons that follow, we determine that the first exception applies, and therefore, we do not address plaintiff's remaining arguments.

¶ 18                     A. *Res Judicata* Law and Exceptions

¶ 19 Three requirements must be satisfied for *res judicata* to apply: (1) a final judgment on the merits must have been entered by a court of competent jurisdiction, (2) an identity of cause of action must exist, and (3) the parties or their privies must be identical in both actions. *Id.* at 467. The doctrine of *res judicata* provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. *Id. Res judicata* bars not only what was actually decided in the first action, but also whatever could have been decided. *Id.* That *res judicata* prohibits a party from seeking relief on the basis of claims that could have been resolved in a previous action serves to prevent parties from splitting their claims into multiple actions. *Id.* at 472-73. The rule against claim-splitting is founded on the premise that litigation should have an end and that no person should be unnecessarily harassed with a multiplicity of lawsuits. *Rein v. David A. Noyes Co.*, 172 Ill. 2d 325, 340 (1996). A plaintiff who splits his claims by voluntarily dismissing and refiling part of an action after a final judgment has been entered on another part of the case subjects himself to a *res judicata* defense. *Hudson*, 228 Ill. 2d at 473.

¶ 20 The supreme court has adopted the exceptions to claim-splitting set forth in section 26(1) of the Restatement (Second) of Judgments. *Rein*, 172 Ill. 2d at 341 (citing Restatement

(Second) of Judgments § 26(1) (1980)). *Res judicata*'s rule against claim-splitting does not bar a refiling if "(1) the parties have agreed in terms *or in effect* that plaintiff may split his claim or the defendant has acquiesced therein; (2) the court in the first action expressly reserved the plaintiff's right to maintain the second action; (3) the plaintiff was unable to obtain relief on his claim because of a restriction on the subject-matter jurisdiction of the court in the first action; (4) the judgment in the first action was plainly inconsistent with the equitable implementation of a statutory scheme; (5) the case involves a continuing or recurrent wrong; or (6) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason." (Emphasis added.) *Id.*

¶ 21    In this case, we are concerned with the first exception. The exception applies when the parties have acquiesced *or* agreed in terms *or* in effect. *Dinerstein v. Evanston Athletic Clubs, Inc.*, 2016 IL App (1st) 153388, ¶ 45. As indicated by the disjunctive "or," these are three discrete concepts: acquiescence, agreement in terms, and agreement in effect. *Id.* Acquiescence occurs *after* refiling, and therefore, for the purposes of this analysis, we set it aside. *Id.* ¶ 49.

¶ 22    Both agreement in terms and agreement in effect occur sometime *before* refiling. *Id.* ¶¶ 53, 56. Agreement in terms means that the parties explicitly agreed that the defendant would not object to the plaintiff's refiled action on *res judicata* grounds. *Id.* ¶ 53. There has been an agreement in terms when there has been "an *expressed* understanding between the parties, prior to refiling, that the plaintiff could refile without an objection based on *res judicata.*" (Emphasis in original.) *Id.* Agreement in terms is a higher standard than agreement in effect. An agreement in terms would necessarily satisfy the requirements of the agreement-in-effect exception. See *id.* ¶ 56.

¶ 23    " 'Agreement in effect' is more elusive of precise definition than the other two parts. It must be something short of full-fledged, express consent to the refiling—otherwise it would be an 'agreement in terms'—and it must occur prior to the refiling—otherwise it would be acquiescence." *Id.* Before the claim is refiled, silence alone cannot be sufficient to establish an agreement in effect. *Id.* ¶ 59. Under our adversarial system, a defendant is not obligated to stop a plaintiff from making a fatal mistake. *Id.* ¶ 60. However, "the law must recognize a qualitative difference between a defense attorney making no representations, one way or the other, concerning a plaintiff's right to refile her claim and that a defense attorney engaging in conduct that, while falling short of an express consent (an 'agreement in terms'), implies that the defendant will not object to a refiling of the claim based on *res judicata.*" *Id.* Thus, agreement in effect means:

> "conduct by defense counsel, before the plaintiff voluntarily dismisses the case, that implies that the defendant will not object to claim-splitting when the action is refiled. Silence alone is not enough. Agreement or nonobjection to the *voluntary dismissal* is not enough. The defendant, in word or deed, must imply that the defendant will not object to the claim-splitting if and when the action is refiled." (Emphasis in original.) *Id.* ¶ 61.

¶ 24                  B. The Agreement-in-Effect Exception as Applied to the Instant Case

¶ 25    Here, the trial court erroneously determined that only an *express* agreement from defendants could satisfy the first exception to claim-splitting. The court stated: "There was

- 6 -

no *explicit* agreement or offer that [defendants] would waive anticipated future defenses," and "[a]ll that [defendants did on December 7, 2015,] is *explicitly* waiv[e] the right to reimbursement of costs on [re]filing, and I can't expand beyond what is *explicitly* said in order to ultimately agree with [plaintiff's] contention." (Emphases added.)

¶ 26　　The trial court did not have the benefit of the 2016 *Dinerstein* opinion, and instead, it relied on *Matejczyk*. However, *Matejczyk* stated that the *court's reservation*, not the *defendant's agreement*, must be express. *Matejczyk*, 397 Ill. App. 3d at 11. Further, *Matejczyk* did not specifically address the agreement-in-effect exception. *Id.* Therefore, *Matejczyk* is not dispositive.

¶ 27　　Under an agreement-in-effect analysis, defendants need only imply by their conduct that they will not object to claim-splitting when the action is refiled. *Dinerstein*, 2016 IL App (1st) 153388, ¶ 61. Under this analysis, we do not look for express words or an express waiver of a *res judicata* defense. *Id.* Rather, we look to conduct and resulting implications under the totality of the circumstances. *Id.*

¶ 28　　Here, on the date the case was set for trial, the parties met in chambers. Plaintiff's counsel, who had a visibly bruised face, disclosed that she had been battered by her son, a military veteran who had returned from Afghanistan. She feared that the bruising would distract from her presentation of the case to the jury. She also doubted her ability to competently represent plaintiff so soon after a devastating event. She had sought advice from a respected senior attorney who told her that he would "never" proceed under such circumstances; it would not be fair to the client. The court, in June 2016, recounted that, in December 2015, it had "agreed completely" with plaintiff's counsel; that is why it had not required her to report the basis for the continuance on the record.

¶ 29　　After the parties went back on the record, defendants stated that they were "not unsympathetic," but they objected to the continuance. If the court were inclined to grant the continuance, they wanted plaintiff to bear the costs of the experts' cancellation fees. The court stated that plaintiff's counsel could choose to proceed to trial or continue the case and bear the costs. Plaintiff's counsel was not in the position to agree to unlimited fees. She wanted an estimate. Defendants could not provide one. Plaintiff and defendants reached an impasse. Plaintiff's counsel appealed to the court and defense counsel for suggestions on how to proceed.

¶ 30　　In this context, the following sequence occurred: (1) *defendants s*uggested that plaintiff dismiss and *refile*, (2) the court told plaintiff that the suggested course of action would culminate in a September 2016 trial and would be advantageous *vis-a-vis* a continuance because it would be "cheaper," and (3) defendants failed to correct anything the court said, even offering to draw up the written order.

¶ 31　　Defendants urge that the second circumstance should stand on its own, arguing that they had no obligation to correct the court's representation that plaintiff could proceed to trial. Even this circumstance, in isolation, is a step removed from the common-law principle that a defendant need not stop the plaintiff from making a fatal error. In any case, we do not consider in isolation the implications of defendants' failure to correct the court. Rather, the court's assurances were part of the larger set of circumstances, including, on the front end, defendants' initial suggestion that plaintiff dismiss and refile and, on the back end, defendants' offer to draw up the written order.

¶ 32    We acknowledge plaintiff's counsel's candid statement that she did not contemplate *res judicata* specifically. However, in light of all of the circumstances on record, this point is not dispositive. This case is about agreement in effect, which is a lower standard than agreement in terms. Here, in the context of a discussion about how to bring her case to trial without incurring costs, defendants suggested that plaintiff voluntarily dismiss and refile. Plaintiff's counsel sought and was given assurances that the claim could be refiled and proceed to trial.

¶ 33    As stated by the court in *Dinerstein*, there must be a qualitative difference between a defense attorney who has made no representation concerning a plaintiff's right to refile and a defense attorney engaging in conduct that implies he will not object to the refiling of a claim based on *res judicata*'s rule against claim-splitting. Defendants in this case clearly did more than remain silent as to the issue of refiling. For the reasons stated above, in context, defendants' conduct implied that they would not object to a refiling based on *res judicata*'s rule against claim-splitting.

¶ 34    *Dinerstein* supports our decision. The *Dinerstein* court explained that, *if true*, the facts alleged in the plaintiffs' affidavit were sufficient to establish an agreement in effect. *Id.* ¶¶ 63-64. According to the plaintiffs' counsel, immediately following the denial of the parties' agreed motion for a continuance to complete discovery, he and defense counsel discussed securing a voluntary dismissal without prejudice *so that the case could be refiled*. *Id.* ¶ 39. Defense counsel indicated that she was "agreeable" to that option. *Id.* Defense counsel revealed that she was not ready to go to trial either because she still had depositions to conduct and the parties had not yet exchanged expert reports. *Id.* ¶ 40. Defense counsel brought up the idea of mediation upon the refiling of the case, which, in plaintiffs' view, she would not have done if she were planning to object to the refiling of the case. *Id.* ¶ 62. As in the instant case, the discussion centered on the viability of the refiled suit, and it did not reference *res judicata* specifically. *Id.* ¶¶ 39-41.

¶ 35    Defense counsel submitted a competing affidavit. *Id.* ¶ 41. She averred that "the topic [of refiling] never even came up, not explicitly." *Id.* ¶ 62. However, she did admit that she brought up the option of voluntary dismissal (but not refiling, let alone *res judicata*) and sent the text of the dismissal statute to plaintiffs' counsel. *Id.* ¶ 63. She further admitted that they discussed the state of future discovery. *Id.* ¶ 62.

¶ 36    The *Dinerstein* court was tempted to reverse outright based on the pleadings and competing affidavits alone. *Id.* ¶ 63. "After all, defense counsel concedes she brought up the option of voluntary dismissal herself, and actually sent the text of the voluntary dismissal statute to opposing counsel. And, as we just mentioned, she further concedes that the topic of future discovery was discussed, implying that a future lawsuit would be viable." *Id.* However, the *Dinerstein* court determined that the facts were sufficiently contested on the material points such that the dispute should not be resolved based on documentary evidence alone. *Id.* ¶ 64. It explained that the case would benefit from an evidentiary hearing, where each side could put a fine point on its position and question opposing witnesses. *Id.* Hence, it remanded the case, instructing the trial court to determine whether the defendant had agreed in effect to allow claim-splitting. *Id.*

¶ 37    Remand is not necessary in this case because the facts are not disputed. There are no competing affidavits in this case. The *Dinerstein* defendant stated that it brought up the option of voluntary dismissal but *not* of refiling. Here, in contrast, there is no dispute that

- 8 -

defendants suggested *both* voluntary dismissal and refiling. Defendants implied the viability of the refiled claim. Further, plaintiff's counsel had just disclosed that she had been battered and did not feel up to the task of representing her client. She stated that she did not know what to do. Defendants could have remained silent, but they did not. They suggested refiling. They were no longer concerned with cancellation fees. They listened as the court informed plaintiff's counsel that, upon refiling, there would be a trial in September 2016. They offered to draw up the order to that effect, but they omitted the words "upon refiling." With these facts on the record, we determine that, as a matter of law, defendants agreed in effect not to object to plaintiff's refiling.

¶ 38                                    C. Remaining Points

¶ 39        We find defendants' brief unconvincing on the issue of agreement in effect. Defendants merely note that agreeing to the voluntary dismissal alone is not enough and that they were not obligated to stop plaintiff from making a fatal mistake. As we have already discussed, defendants did more than agree to the voluntary dismissal or remain silent; they suggested refiling as a method to preserve plaintiff's claim without associated costs.

¶ 40        Defendants liken this case to *Klancir v. BNSF Ry. Co.*, 2015 IL App (1st) 143437, ¶¶ 25-32. However, *Klancir* is inapposite. *Klancir* did not involve *res judicata* or any exception to claim-splitting. *Id.*

¶ 41        We do not reach plaintiff's argument that, under the second exception, the court's express leave to refile is alone sufficient, and the court need not evince an awareness of *res judicata*'s rule against claim-splitting when it grants leave to refile or show a specific intent to excuse the refiling from *res judicata*'s rule against claim-splitting. See *Severino v. Freedom Woods, Inc.*, 407 Ill. App. 3d 238, 251 (2010) (leave to refile is sufficient); *cf. Matejczyk*, 397 Ill. App. 3d at 10 (considering the court's specific intent to invoke an exception to the rule against claim-splitting). Similarly, we do not reach plaintiff's equitable-estoppel argument.

¶ 42                                    III. CONCLUSION

¶ 43        We reverse the trial court's dismissal based on *res judicata* because the agreement-in-effect exception applies. We reinstate the refiled negligence complaint and remand the cause.

¶ 44        Reversed and remanded.