2022 IL App (1st) 192158-U

SECOND DIVISION
September 27, 2022

No. 1-19-2158

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| JOHN F. KENNEDY and SHERRI TAYLOR-KENNEDY, | ) | |
| | ) | Appeal from the |
| Plaintiffs, | ) | Circuit Court of |
| | ) | Cook County |
| v. | ) | |
| | ) | 08 M1 152037 |
| MKF I & II, INC. and MAXWELL FREMPONG, | ) | |
| | ) | Honorable |
| Defendants-Appellees, | ) | James Hanlan, Jr., |
| | ) | Judge Presiding |
| (Law Offices of Alexander S. Michalakos, P.C., | ) | |
| Petitioner-Appellant.) | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Justices Howse and Cobbs concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Vacated and remanded. Disputed questions of fact surrounded petition for adjudication of attorney lien, warranting evidentiary hearing on remand.

¶ 2    This appeal involves an attorney's lien. Under state law, attorneys may place a lien on any recovery their client receives as a result of a verdict or settlement, and the defendant who owes the client that recovery must respect that lien. See 770 ILCS 5/1 (West 2016). To enforce or "perfect" that lien, the attorney must serve notice of the lien to the defendant in writing. *Id*.

Once perfected, a court may adjudicate and enforce the lien to ensure that the attorney receives the amount of money owed under the attorney-client agreement or statutory fee award. *Id.*

¶ 3    Because the Attorney Lien Act is in derogation of the common law, its provisions must be strictly followed. *In re Chicago Flood Litigation*, 289 Ill. App. 3d 937, 943 (1997). One such requirement is that the attorney must serve notice of the lien on the defendant while the attorney is representing the client; if that attorney-client relationship is terminated for whatever reason before notice of that lien is served, the lien is unenforceable. *Rhoades v. Norfolk & West Railway Co.*, 78 Ill. 2d 217, 227 (1979); *Chicago Flood Litigation*, 289 Ill. App. 3d at 943; *Wegner v. Arnold*, 305 Ill. App. 3d 689, 696 (1999).

¶ 4    That black-letter principle of law frames our question here. The ruling below, concerning an attorney's attempt to adjudicate and enforce his lien, rises and falls solely on the question of whether the attorney served his lien on the defendant before or after the attorney's clients fired him. Ordinarily, that might not seem like a hard question to answer, but here, all within the scope of a single hearing in September 2019, both things happened—the clients fired the attorney, and the attorney served the lien on the defendant. What is less clear is which happened first. As noted above, if the attorney served the lien while he was still representing his clients—before they fired him—the lien was validly perfected. If, on the other hand, he did not serve the lien until *after* his representation was terminated, the lien is unenforceable.

¶ 5    In a later hearing to adjudicate and enforce the lien, the trial court remembered the September 2019 hearing one way: that the clients fired the lawyer first, *then* the attorney served the lien, which meant that the lien was not properly perfected. The court's memory, however, was inconsistent with that of both parties to the attorney-client relationship; both the lawyer and his client indicated in written submissions to the court that the lien was served *before* the

attorney's representation was terminated, if only by minutes. The court, unmoved, stuck with its memory of the sequence of events, ruling without conducting an evidentiary hearing, and denied the request to enforce the lien.

¶ 6      Under the somewhat unique circumstances of this case, the interests of justice require that we remand this cause for an evidentiary hearing. By no means do we hold that the trial court's memory was mistaken, but only that in the face of conflicting testimony from more than one witness, the best course of action is hearing all relevant witness testimony under oath, subject to cross-examination. We thus vacate the court's ruling and remand for that hearing.

¶ 7                                        BACKGROUND

¶ 8       In 2008, plaintiffs, John Kennedy and Sherri Taylor-Kennedy, hired the Law Offices of Alexander S. Michalakos, P.C. (Michalakos) to sue their landlord for violations of Chicago's Residential Landlord and Tenant Ordinance (RLTO). Under the RLTO, a prevailing plaintiff is entitled to an award of attorney's fees. See Chicago Municipal Code § 5-12-180 (added November 6, 1991).

¶ 9      The retainer agreement provided that payment for Michalakos's services was contingent on a recovery from the landlord in the lawsuit, and that any attorney fees would be paid by the landlord pursuant to the RLTO. If the Kennedys terminated Michalakos, he would be entitled to "reasonable attorney fees accumulated to date, plus costs," at the billable rate of $275 per hour.

¶ 10     The suit was filed. The landlord defendants were Maxwell Frempong and his company, MKF I & II, Inc.

¶ 11     On June 3, 2009, the Kennedys, represented by Michalakos, won the case after a bench trial, and the Kennedys were awarded $6,300 plus costs. Later that year, Michalakos initiated

collections proceedings on the judgment. There was very little progress on collections over the next decade, though Michalakos insists that he continued trying to collect from Frempong.

¶ 12    Given the age of the uncollected judgment, about ten years later, in December 2018, Michalakos filed a petition to revive the judgment. As of that time, Frempong had made no payments toward the judgment. Frempong appeared by counsel to contest the revival and claim exceptions. In April 2019, the court revived the judgment "in the sum of $13,563.21 with costs and interested as stated above." After this revival, Michalakos resumed his collection efforts. In June 2019, Michalakos finally filed a petition for attorney fees under the RLTO. In August, the court consolidated several motions, including this petition for attorney's fees, into a single hearing scheduled for September 23, an important hearing in the telling of this story.

¶ 13    Unfortunately, we lack a transcript of the September 23 hearing. We can discern certain information from the record, however. We know that (1) the Kennedys indicated to the court that they wanted to settle with Frempong; (2) at some point in time, the hearing was recessed and the parties met outside in the hallway; (3) during the recess, Michalakos served Frempong with an attorney lien for his claimed right to attorney fees; (4) at some point, either before or after the recess, the Kennedys fired Michalakos; (5) the Kennedys did, in fact, settle with Frempong at that hearing after terminating Michalakos's representation.

¶ 14    Ultimately, the court entered that day an "agreed" order stating that "the parties have agreed to settle this matter and withdraw all pending motions including the petition for attorney fees, rule to show cause and motion for stock turnover.  See Satisfaction and Release of Judgment signed by [the Kennedys] on September 23, 2019." The "Agreed" Satisfaction and Release of Judgment shows that the parties settled for $7,500. It does not mention attorney fees awarded pursuant to the RLTO.

¶ 15    A few days later, on September 27, Michalakos filed a petition to adjudicate the attorney lien he had served on Frempong. In support of the petition, he filed an affidavit of his own, where he explained that at the September 23 hearing, he "served a notice of attorney's lien on Maxwell Frempong personally in the hallway outside the courtroom and told him it was a Notice of my Attorney Lien for my fees." Frempong refused to accept the notice, throwing it on the floor, whereupon Michalakos followed him back into the courtroom. Frempong told Michalakos, " '[I]t's my idea to cut you out!' "

¶ 16    Frempong and his lawyer then "huddled" with the Kennedys in the courtroom, discussing settlement. As Frempong's lawyer appeared to be signing settlement papers, Mrs. Kennedy approached Michalakos and said, " 'You're terminated! You don't get anything.' "

¶ 17    Clearly, then, Michalakos's affidavit swore that he was not terminated by the Kennedys until after he had served the attorney's lien on Frempong.

¶ 18    Michalakos then filed a supplemental affidavit that included a complaint to the Attorney Registration and Disciplinary Commission (ARDC) that Mrs. Kennedy had filed against Michalakos. Generally, her complaint was that she had not realized that Michalakos had revived the judgment and was still representing her; Michalakos allegedly had not informed her of that fact, which she deemed unethical.

¶ 19    But most relevant for our purposes is her description of the fateful September 23 hearing. Her ARDC complaint reads in part as follows:

> "On Monday September 23, 2019, my husband and I arrived to the courtroom and checked in to see legal aid, to see how to proceed with this matter so we were waiting. Shortly after this, [Michalakos] checked in and the clerk informed him that we were there, he was surprised, and he asked him where we were, and he pointed to us, sitting

right behind him (he has not seen or talked to us before 9/9/19, since 2009). So he came over and asked could we go in the hallway. I let him know that he was being conniving and greedy and then I asked when was he going to contact us, his response was when he had cash in hand.

*When the case was called*, I stood by and listened to him but then I raised my hand and informed the Judge that although he says he has been in contact with us, he has not seen nor spoken to us regarding any offers made and that we were ready to settle the case.

\*\*\*

*Upon going before the judge again*, [Michalakos] was fired as our attorney that we didn't know that we had." (Emphasis added.)

¶ 20    On October 21, the court held a hearing on the petition to adjudicate the lien. Unlike the September 23 hearing, we have a transcript of this one. Michalakos informed the court about the supplemental filings. As the court had not seen them, it took a very brief recess to review them. Upon recalling the case, the court explained that the issues in the supplemental affidavit did not go to the "basis for my decision."

¶ 21    The court then held that

"As appellate courts and other courts have said, the Attorney Lien Act is a statutory creation and therefore the requirements need to be strictly complied with, one of which is that the attorney must serve the notice of the lien during the existence of the attorney-client relationship.

This Court finds based on counsel's – well, clients' statements when checking in at the hearing on the citation some number of weeks ago and their statements in open

court that relationship had terminated prior to the time the recess was taken during which recess you had attempted to serve Mr. Frempong with the lien. So on that basis, the petition to enforce the lien is denied."

¶ 22    The court then entered a written order denying Michalakos's petition. Michalakos timely appealed.

¶ 23                                        ANALYSIS

¶ 24    This case was taken on appellant's brief only. We first entered an order to that effect in February 2021. But Frempong filed an appearance and asked for leave to file a brief. We granted that request, but as of August he had still failed to do so. On that basis, we entered a second order, again taking the case on appellant's brief only.

¶ 25    When taking a case on the appellant's brief only, we may review it on the merits, where the record is "simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief." *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). However, "if the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record the judgment of the trial court may be reversed." *Id*.

¶ 26    Before this court, Michalakos argues that the court erred in two ways: first, the court improperly used its own memory to make a finding of fact, in effect acting as his own witness; and second, the finding itself was against the manifest weight of the evidence.

¶ 27    On the first point, Michalakos principally relies on *Hartgraves v. Don Cartage Co.*, 63 Ill. 2d 425 (1976). There, a juror was unable to continue with trial, leaving the panel at 11 jurors. *Id*. at 427. There was no pretrial stipulation to proceed with less than 12 jurors, and the parties apparently discussed the issue off the record. *Id*. After these discussions, defendant moved for a

7

mistrial in open court. *Id.* The motion was denied. *Id.* After losing at trial, defendant filed a post-trial motion, arguing that it had not agreed to proceed with fewer than 12 jurors. *Id.* At the hearing on the motion, "the judge stated that he had a clear recollection of the in-chambers discussion. He stated that defendant's counsel had suggested that [the court] overrule the motion for mistrial and agreed that the trial could proceed." *Id.* The trial court thus denied the motion.

¶ 28    Our supreme court agreed with the appellate court that the trial court's order must be reversed. The supreme court found no evidence to support the court's "recollection." *Id.* In fact, the report of proceedings showed the exact opposite. *Id.* at 429. The court summarized the law as follows: "any corrections of or additions to the record which contradict the clear and unambiguous contents of the record must be supported by something other than the 'clear memory' of the trial judge." *Id.* at 432.

¶ 29    This case does not quite reach the level of *Hartgraves*. There, record evidence—a motion for mistrial—showed that the defendant objected to proceeding with an 11-juror panel, against the court's memory of an off-record conversation to the contrary. Here, the trial court was apparently relying on what it had observed first-hand at the September 23 hearing. And while there is some contradictory evidence in the record—the written recollections of both Michalakos and Mrs. Kennedy, both of which are inconsistent with the trial court's memory of the sequence of events—that is not as conclusive as the written motion for mistrial, which on its face made clear that the defendant was *not* waiving its right to a 12-juror panel.

¶ 30    And add to that the fact that there is no transcript of the September 23 hearing. The law is clear that the appellant—here, Mikalakos—bears the burden of providing a sufficient record on appeal to support his position, and the absence of a written transcript is held against him. See *Foutch v. O'Bryant*, 99 Ill. 2d 389 (1984).

¶ 31    All of that said, we find merit to Michalakos's position on appeal here.

¶ 32    For one thing, this is not quite a *Foutch* case, as the record does contain evidence supporting Michalakos' position—both his and his former client's written accounts of the sequence of events, in which Mrs. Kennedy fired Michalakos *after* he served the attorney lien on Frempong, not before Michalakos did so. The hearing transcript would have helped, but we cannot say that we are utterly in the dark here, as we often are when the appellant fails to provide a transcript of proceedings. So the force of the *Foutch* doctrine is greatly diminished here, when the appellant has managed to make his case even without the transcript of proceedings.

¶ 33    Ultimately, we are left with this: The judge clearly indicated that his memory was that Mrs. Kennedy fired Michalakos when the parties first stepped up for hearing, before the attorney lien was served in the hallway at recess. But the two parties to the attorney-client relationship—Michalakos and Mrs. Kennedy—to varying degrees appear to remember the sequence of events in the opposite order. Michalakos's sworn affidavit said so in no uncertain terms, and by far the most understandable reading of Mrs. Kennedy's ARDC complaint was that she complained to the judge about her attorney "[w]hen the case was called," but then "*[u]pon going before the judge again*, [Michalakos] was fired as our attorney." (Emphasis added.) That certainly suggests that Mrs. Kennedy did not fire Michalakos until after the lien was served during the recess, when she went "before the judge *again*."

¶ 34    That does not mean that the trial court's memory was wrong. Indeed, it is clear that *some* discussion of Michalakos's role as attorney for Mrs. Kennedy took place the first time the parties appeared before the judge on September 23; she seemed at a loss as to how Michalakos could be representing her when she did not even realize that the judgment had been revived.

¶ 35    But when there was evidence before the court that each of the parties to the attorney-client relationship believed that the relationship was terminated only *after* the attorney lien was served on Frempong, the better course, in our view, would have been for the trial court *not* to merely rely on its own memory, but rather to hold an evidentiary hearing on the matter to give each party the opportunity to call, examine, and cross-examine the relevant witnesses to put a finer point on their respective positions. Perhaps the testimony of these other witnesses would not sway the court and its own memory, but no judge is infallible, and no memory is perfect. We can think of no harm in holding this hearing to ensure that justice is done in this matter.

¶ 36    This court has not been shy about vacating and remanding for an evidentiary hearing when the record does not convince us that we should either reverse or affirm, given unresolved questions of fact. See, *e.g.*, *Door Properties, LLC v. Nahlawi*, 2020 IL App (1st) 173163, ¶ 55 ("rather than reverse the judgment outright, the better course is to vacate the judgment and remand for an evidentiary hearing"); *Dinerstein v. Evanston Athletic Clubs, Inc.*, 2016 IL App (1st) 153388, ¶ 54. That is the proper course here as well.

¶ 37    We thus vacate the judgment and remand the cause for an evidentiary hearing on the question of whether the Kennedys terminated Michalakos as their attorney before or after Michalakos served notice of his attorney lien on Frempong. The court will then proceed accordingly from its ruling on that question. We make no comment whatsoever on any other issues surrounding the attorney lien or any other claims Michalakos may have.

¶ 38                              CONCLUSION

¶ 39    The judgment of the circuit court is vacated. The cause is remanded for an evidentiary hearing consistent with our instructions above.

¶ 40    Vacated and remanded with instructions.