2024 IL App (1st) 220535-U

No. 1-22-0535

Order filed February 16, 2024

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| HANNAH PUCKORIUS CARTA, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellant, | ) | |
| | ) | No. 19 L 001795 |
| v. | ) | |
| | ) | The Honorable |
| MATTHEW KELLY, | ) | Ronald F. Bartkowicz, |
| | ) | Judge, Presiding. |
| Defendant-Appellee. | ) | |

JUSTICE C.A. WALKER delivered the judgment of the court.
Presiding Justice Oden Johnson and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*: we vacate the circuit court's judgment and remand the case for an evidentiary hearing where unresolved factual issues preclude this court from conducting a meaningful review on appeal.

¶ 2    This case involves the validity of a confidentiality and non-disparagement clause ("confidentiality clause or clause") in a settlement and release of claims agreement ("settlement agreement or agreement") involving claims of sexual misconduct. Plaintiff-Appellant Hannah

Carta filed a motion to vacate the circuit court's dismissal order and rescind a settlement agreement ("motion to rescind") resulting from an inappropriate sexual relationship between her and Defendant-Appellee Matthew Kelly. The circuit court denied Carta's request to rescind the agreement and vacate the dismissal order but reformed the agreement's confidentiality clause to allow Carta to speak about the facts surrounding the alleged sexual misconduct within "well recognized, confidential, and privileged relationships, such as clergy-parishioner, doctor-patient, psychotherapist-patient, and spousal relationship." Carta appealed, arguing the circuit court (1) abused its discretion when it denied rescission of the settlement agreement and (2) erred in finding the agreement was enforceable because (a) the confidentiality clause violated Illinois public policy and (b) the confidentiality clause was substantively unconscionable. For the following reasons, we vacate the circuit court's judgment and remand for an evidentiary hearing on the merits of the motion to rescind.

¶ 3                                I. BACKGROUND

¶ 4      Carta is a graduate of St. Giles School, an elementary and middle school overseen by the Archdiocese of Chicago, an ecclesiastical entity of the Roman Catholic Church. Kelly was the St. Giles School's basketball coach and coached Carta when she was in the fourth, fifth, seventh, and eighth grades. In the summer of 2009, Kelly hired Carta, then 14 years old, to serve as an assistant coach for the St. Giles girls' basketball, volleyball, and co-ed soccer teams. Carta also served as the assistant coach of the boys' basketball teams and worked for Kelly as a maintenance crew member at the River Forest Tennis Club during the summer of her sophomore and junior year of high school.

¶ 5    On February 19, 2019, Carta filed a complaint against the Archdiocese of Chicago for negligence and against Kelly for battery. The complaint alleged Kelly engaged in an inappropriate sexual relationship with Carta, a minor, while employed at St. Giles School from 2009 to 2012. On June 28, 2021, the parties conducted a settlement mediation and reached an agreement. The parties drafted two agreements entitled "settlement agreement and general release of claims," one pertaining to Carta's settlement with the Archdiocese of Chicago[1] and one pertaining to Carta's settlement with Kelly. The settlement agreement between Kelly and Carta provided that Kelly would pay Carta $25,000 upon the dismissal of the action.

¶ 6    Relevant here, the confidentiality and non-disparagement provision in the settlement agreement between Carta and Kelly states the following:

"As a part of the consideration for entering into this settlement and release, Plaintiff and Defendant promise, covenant, and agree as follows:

a. To keep the terms of this settlement, negotiations and/or considerations leading to this Settlement Agreement, all claims underlying the Settlement Agreement and any and all allegations, facts, circumstances or instances underlying said claims strictly confidential and not to communicate any of the foregoing orally or in writing to any third party, other than: any required disclosure made to financial institutions, state or federal tax authorities, tax preparers, in addition to immediate family and the parties' financial advisors. In the event disclosures regarding the terms of this Settlement Agreement are required to be made by any Party, based on the foregoing, the Party or its representative making the disclosure shall attach to said disclosure Notice that the disclosure is confidential, subject to a

_____

[1] The settlement agreement between Carta and the Archdiocese of Chicago is not at issue on appeal.

confidentiality agreement, and that the disclosure cannot be further disseminated. Under no circumstances shall any disclosure of the terms of and the negotiations and/or considerations leading to this Settlement Agreement be made by the Plaintiff, Defendant or their attorney(s), agent(s), and representative(s) to any press media, professional organizations, or any other third parties. If inquiry is made by the press or any third party regarding the facts of, terms of, or negotiations and/or considerations leading to this Settlement Agreement, or regarding the merits of the above-referenced lawsuit, Plaintiff, Defendant and their attorney(s), agent(s), and/or representative(s) shall only reply: 'NO COMMENT'. There shall be no additional comment made and, specifically, the fact of settlement shall be kept confidential."

¶ 7    The indemnification provision in the settlement agreement between Carta and Kelly states the following:

"Except for the payment specified in Section 5 of this Agreement [pertaining to Kelly's payment to Carta], the releasing party agrees to indemnify and hold harmless the released party from liability for any and all claims related to the incident made by any person, firm, corporation, or governmental or non-governmental entity of any kind against any of the released parties, as a result of claims made by the Plaintiff arising out of this incident or this action, including but not limited to, any liability for claims of negligence, breach of contract, misrepresentation, fraud, subrogation of claims or liens arising out of the payment of Medicare payments however described or categorized, or actionable conduct of any kind, subrogation of claims or liens, and any liability for costs and/or reasonable attorney fees incurred by the releasing parties or her counsel in connection with

any claims covered by the indemnification provisions of this paragraph or in connection with any liens asserted against the payment specified in Section 5 of this Agreement."

¶ 8    Carta signed the settlement agreement on August 24, 2021, and the circuit court dismissed the case on August 27, 2021. On September 22, 2021, Carta filed a motion to vacate the court's dismissal order pursuant to section 2-1301(e) of the Code of Civil Procedure (735 ILCS 5/2-1301(e) (West 2020)) and to rescind the settlement agreement with Kelly. In the motion, Carta argued (1) the settlement agreement should be rescinded because she believed that the confidentiality provision would not restrict her from sharing the details of her abuse, and therefore, was unilaterally mistaken about the confidentiality clause; (2) the confidentiality clause was unconscionable because it precluded her from sharing facts about her abuse to a therapist, medical professional, clergy, or friend and "vulnerable youth to protect against further abuse"; and (3) the confidentiality clause violated Illinois public policy of protecting children from sex offenders. In her reply motion, Carta asserted she was never advised about the indemnification provision in the settlement agreement that required her to indemnify Kelly from liability for actionable conduct of any kind related to any claims covered under the provision.

¶ 9    On March 22, 2022, the circuit court denied Carta's request to rescind the agreement and vacate the dismissal order but reformed the agreement's confidentiality clause. The court recognized that Illinois law "ensure[s] that individuals receive 'needed medical care and emergency counseling' " and found reformation, rather than recission, was the appropriate remedy to "retain the need for confidentiality for Defendant and the need for spiritual and health care for Plaintiff." As such, the circuit court reformed the confidentiality clause to "indicate that Plaintiff is not prohibited from seeking care from well recognized, confidential, and privileged

relationships, such as clergy-parishioner, doctor-patient, psychotherapist-patient, and spousal relationship." The court also found Carta failed to adequately raise a claim about the indemnification provision and denied any equitable relief on that provision. This appeal follows.

¶ 10                                II. JURISDICTION

¶ 11    On September 22, 2021, Carta filed a motion to vacate the court's dismissal order and rescind the settlement agreement. The circuit court entered its judgment on March 22, 2022. Carta filed a notice of appeal on April 19, 2022. We have jurisdiction over this appeal, pursuant to article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017).

¶ 12                                  III. ANALYSIS

¶ 13    On appeal from the motion to rescind, Carta argues the circuit court (1) abused its discretion when it ordered reformation, rather than rescission, of the confidentiality clause in the settlement agreement and (2) erred in finding the agreement was enforceable where (a) the confidentiality clause violated Illinois public policy and (b) the confidentiality clause was substantively unconscionable.

¶ 14    Section 2-1301(e) provides, "The court may in its discretion, before final order or judgment, set aside any default, and may on motion filed within 30 days after entry thereof set aside any final order or judgment upon any terms and conditions that shall be reasonable." 735 ILCS 5/2-1301(e) (West 2022). "When ruling on a motion to vacate, the predominant concern is whether substantial justice is being done between the parties and whether it is reasonable under the circumstances to proceed to trial on the merits." *Larson v. Pedersen*, 349 Ill. App. 3d 203, 207-08 (2004). The court should consider all the events leading up to the judgment and should decide

what is just and proper based on the facts of the case. *Id.* "The guiding principle is to prevent dismissal when it would be unfair, unjust, and inequitable." *Mann v. Upjohn Co.*, 324 Ill. App. 3d 367, 377 (2001). A circuit court's decision on a motion to vacate under section 2-1301 is reviewed for an abuse of discretion. *Id.* at 207-08.

¶ 15    We begin with Carta's argument that the circuit court abused its discretion when it ordered reformation, rather than rescission, of the settlement agreement. Carta claims recission is the appropriate remedy because, despite exercising due care, she mistakenly believed the confidentiality clause only referred to the settlement terms when the parties entered into the agreement but later discovered the provision pertained to any facts related to the underlying claims of sexual misconduct. Kelly asserts the circuit court properly denied rescission of the settlement agreement because Carta was not mistaken, but rather she agreed to confidentiality during the mediation and signed the agreement confirming that she understood the terms of the confidentiality clause.

¶ 16    Under certain circumstances, rescission is appropriate when a party to an agreement asserts a unilateral mistake. *In re Marriage of Agustsson*, 223 Ill. App. 3d 510, 519 (1992). A unilateral mistake occurs when "there is apparently a valid contract in writing, but by reason of a mistake of fact by one of the parties, not due to his negligence, the contract is different with respect to the subject matter or terms from what was intended." (Internal quotation marks omitted.) *Brzozowski v. Northern Trust Co.*, 248 Ill. App. 3d 95, 100 (1993). A party seeking rescission based on a unilateral mistake must show by clear and convincing evidence that (1) the mistake was material; (2) the mistake is so significant as to make enforcement unconscionable; (3) the mistake occurred despite the exercise of due care by the party seeking rescission; and (4) rescission will place the

other party in the status quo. *Siegel v. Levy Organization Development Co. Inc.*, 153 Ill. 2d 534, 545 (1992).

¶ 17    In an action for reformation, a party to an agreement must prove the existence of a mutual mistake or fraud. *Schaffner v. 514 West Grant Place Condominium Association, Inc.*, 324 Ill. App. 3d 1033, 1045 (2001); *Cameron v. Bogusz*, 305 Ill. App. 3d 267, 272 (1999). A written contract may be reformed to reflect the intention of the parties and the agreement between them. *Suburban Bank of Hoffman-Schaumburg v. Bousis*, 144 Ill. 2d 51, 58 (1991).  The purpose of reformation is to "change the written instrument by inserting the omitted provision so that the instrument conforms to the original agreement between the parties." *Id.* at 1044. "What is sought to be reformed *is not the understanding between the parties*, but rather the *written instrument* which inaccurately reflects it." (Emphasis in original.) *Briarcliffe Lakeside Townhouse Owners Association v. City of Wheaton*, 170 Ill. App. 3d 244, 251 (1988). The underlying basis for a reformation action is the existence of a mutual understanding between the parties which the parties agreed to reduce to writing, but in doing so, either through mutual mistake or mistake on one side coupled with fraud on the other, omitted some material provision. *Id.* A mutual mistake is "one where both parties understand that the real agreement is what one party alleges it to be, then, unintentionally, a drafted and signed contract does not express the true agreement." *Cameron*, 305 Ill. App. 3d at 272. To establish a claim for reformation based on mutual mistake, the complaining party must prove by clear and convincing evidence that (1) there was an agreement between the parties; (2) that the parties agreed to reduce their agreement to writing; and (3) that a variance exists between the parties' original agreement and the writing. *Briarcliffe Lakeside Townhouse Owners Association*, 170 Ill. App. 3d at 251.

¶ 18    While similarities exist between the equitable doctrines of reformation and rescission, the two doctrines have evolved separately and are distinguishable. *Estate of Blakely v. Federal Kemper Life Assurance Company*, 267 Ill. App. 3d 100, 106 (1994). "[E]quity cannot make a new agreement for the parties under the guise of reforming one made by them." *Friedman v. Development Management Group, Inc.*, 82 Ill. App. 3d 949, 954 (1980). There must be mutuality of mistake or fraud by the other party to the contract before a written contract can be reformed. *Jonas v. Meyers*, 410 Ill. 213, 224 (1951); *Black v. Illinois Fair Plan Association*, 87 Ill. App. 3d 1106, 1109 (1980). Where the mistake is unilateral and not mutual the contract should be rescinded or cancelled, not reformed. *Id.*

¶ 19    Without conducting an evidentiary hearing, the circuit court denied rescission and granted the motion to rescind in part to reform the confidentiality clause. The court iterated the parties' arguments about Carta's unilateral mistake but found reformation, rather than recission, of the agreement was the appropriate remedy to "retain the need for confidentiality for Defendant and the need for spiritual and health care for Plaintiff." The court reformed the agreement to "indicate that Plaintiff is not prohibited from seeking care from well recognized, confidential, and privileged relationships, such as clergy-parishioner, doctor-patient, psychotherapist-patient, and spousal relationship."

¶ 20    After examining the record on appeal, we cannot determine whether the circuit court's decision was proper. To start, we do not have an adequate record to ascertain the basis of the circuit court's finding of reformation. In this case, reform necessitates that the parties be mistaken, either by a mutual mistake or a mistake of one party and fraud by the other party, about the terms of the agreement. See *Briarcliffe Lakeside Townhouse Owners Association v. City of Wheaton*, 170 Ill.

App. 3d at 251. The record does not contain any information as to whether the parties were mutually mistaken about the confidentiality clause as it pertains to Carta's ability to discuss the facts surrounding the alleged sexual misconduct in well-recognized, confidential relationships when they entered into the agreement. The record is also scant regarding Kelly or his attorneys' knowledge of Carta's mistaken belief as an indication of fraud. In fact, Kelly's allegations point to the opposite conclusion. In his response to the motion to rescind, Kelly alleged that he "was most certainly not aware of the communications between Plaintiff and her counsel, Plaintiff's documented concern with respect to business interference, or Plaintiff's alleged concern about disclosing the allegations to others." We cannot defer to a finding not based on the evidence. See *Hanaman v. Davis*, 20 Ill. App. 2d 111, 115 (1959) ("judgment of the court in action tried without a jury must be based upon evidence admitted in the case and it is essential to sufficiency of findings of court that they be sustained by evidence").

¶ 21    Additionally, the parties raise factual disputes on the issue of rescission based on a unilateral mistake that cannot be determined on the pleadings and supporting documents alone. Carta alleged the following allegations in her motion to rescind and accompanying affidavit. Before signing the settlement agreement, Carta expressed her confusion about the terms of the settlement agreement and asked her attorneys to clarify its terms. After she consulted with her attorneys and received information regarding the agreement's terms at the mediation, she believed she was allowed to share the details of the abuse and was "gravely misled" into signing the settlement agreement. The confidentiality clause unduly prevents Carta from sharing details of her abuse with a therapist, medical professional, clergy, friend or "other vulnerable youth to protect against further abuse" while Kelly is "free to utilize all emotional support services available to

him." This one-sided disparity renders the confidentiality clause unconscionable. If the agreement was rescinded, Kelly would return to the status quo because he would still be able to seek discovery and proceed with litigation.

¶ 22    Contrarily, Kelly alleged Carta was not mistaken about the terms of the settlement agreement because she did not express a lack of understanding during the mediation, the mediation judge "apprised all the parties' counsel and [Carta] of the settlement and the Clause," and while represented by counsel, Carta signed the agreement, which stated she "completely understands and voluntarily accepts all the terms, conditions, and consequences of the Agreement." Kelly contended the confidentiality clause was not material to the agreement because the agreement expressly states that the provision was only material to Kelly, not Carta. Kelly also asserted rescission would not return him to the status quo. Rather, rescission would frustrate any future negotiations as any changes would affect the Archdiocese of Chicago, Kelly's co-defendant, and Kelly "would not be able to reach the same or substantially similar outcome *** where [Carta] would agree to the Clause."

¶ 23    Case law sets forth the elements we must consider when determining whether rescission or reformation is a proper remedy in this case. The record before us hinders our assessment of these elements because there remain factual issues that cannot be resolved on the pleadings alone and the record does not sufficiently demonstrate whether the essential elements of reformation were met. While Carta did attach documentary evidence supporting her argument of recission, this evidence does not entirely resolve the issue. For instance, both Carta and Kelly allege varying facts about whether Kelly would be returned to the status quo if the agreement was rescinded. Carta argues that Kelly still would be able to proceed to litigation and seek discovery while Kelly

contends rescission would frustrate any future negotiations. To ascertain the full extent of the implications, an evidentiary hearing is necessary.

¶ 24   Given this, we find the interest of justice requires we remand the case for an evidentiary hearing on the motion to rescind and related pleadings. See *Steiner v. Eckert*, 2013 IL App (2d) 121290, ¶ 21 ("[a]n evidentiary hearing regarding the formation and terms of a settlement agreement is appropriate when there are disputed factual issues in that regard and additional evidence is necessary to satisfactorily resolve the issues"). This court has vacated and remanded cases for an evidentiary hearing in situations, like here, where there remain issues of fact that preclude us from conducting a meaningful review of the circuit court's decision. See *Kennedy v. MKF I & II, Inc.*, 2022 IL App (1st) 192158-U, ¶ 36 (citing *Door Properties, LLC v. Nahlawi*, 2020 IL App (1st) 173163, ¶ 55 ("rather than reverse the judgment outright, the better course is to vacate the judgment and remand for an evidentiary hearing"), and *Dinerstein v. Evanston Athletic Clubs, Inc.*, 2016 IL App (1st) 153388, ¶ 54). Therefore, we vacate the circuit court's judgment and remand the case for an evidentiary hearing on the merits of Carta's motion to vacate the dismissal order and rescind the settlement agreement with instructions for the circuit court to make factual findings on the elements of rescission and reformation.

¶ 25                                        IV. CONCLUSION

¶ 26   We find that there remain factual issues that preclude this court from conducting a meaningful review of this case on appeal. Therefore, we vacate the judgment of the circuit court and remand the case for an evidentiary hearing on the issue of mistake as is required for determining whether recission or reformation are appropriate actions of the court.

¶ 27   Vacated and remanded with instructions.